

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00609-CV

Marta **ARREDONDO**,
Appellant

v.

**TECHSERV CONSULTING AND TRAINING, LTD.**, T&D Solutions, LLC, and AEP Texas
Central Company,
Appellees

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 15-08-16922-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:　Irene Rios, Justice

Sitting:　　Sandee Bryan Marion, Chief Justice
　　　　　Karen Angelini, Justice
　　　　　Irene Rios, Justice

Delivered and Filed:　September 26, 2018

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

　　　Marta Arredondo appeals the trial court's orders granting Techserv Consulting and

Training Ltd. ("Techserv"), T&D Solutions, LLC ("T&D"), and AEP Texas Central Company's

("AEP") traditional and no-evidence motions for summary judgment. As to T&D, we affirm the

trial court's order as to Arredondo's claims for negligence per se and gross negligence, reverse the

trial court's order as to Arredondo's negligence claim, and remand the cause for further

proceedings. As to AEP, we reverse the trial court's order granting AEP's motions for traditional

and no-evidence summary judgment with regard to Arredondo's claims for negligence, negligence

per se, and gross negligence and remand the cause for further proceedings. As to Techserv, we affirm the trial court's order.

## BACKGROUND

AEP, an electric utility company, entered into a contract with T&D whereby T&D agreed to provide "all supervision, labor, equipment and specified materials necessary to perform underground distribution line construction and/or maintenance services ("Construction Services"), underground distribution line construction and/or maintenance bid projects ("Project Services") and storm restoration services ("Storm Services") to [AEP] on an as needed basis in AEP Texas service areas." These services included "deteriorated pole replacements" and "overhead system maintenance and switching." AEP also entered into a contract with Techserv whereby Techserv agreed to provide "all supervision, labor, and specified equipment and materials necessary to perform joint use engineering services to assess pole attachment construction proposal requests to attach equipment, wires, or other materials to [AEP's] poles submitted to [AEP] by third parties." Techserv's role was to inspect work performed by T&D to ensure the work was completed according to AEP's specifications.

In 2013, AEP prepared and issued a work order to T&D that included the removal of a utility pole[1] located on a municipal right of way easement[2] on Arredondo's property, just outside Arredondo's fence. T&D removed the pole, and T&D marked the work order as completed on

---

[1] The utility pole at issue in this case was a "stub pole." A stub pole is a utility pole from which the top portion has been cut off after the electric wires have been removed and transferred to a new pole but to which other wires, such as telephone or cable, remain attached on the lower portion. A stub pole is not removed until all wires attached to it have been relocated to another pole.

[2] A right of way is a type of easement. *See Grimes v. Corpus Christi Transmission Co.*, 829 S.W.2d 335, 337 (Tex. App.—Corpus Christi 1992, writ denied) ("Right-of-way easements may be used generally for travel, transportation of persons and property, and communication."); *see also Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) ("an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes").

December 2, 2013. After T&D employees removed the pole, they laid it on the ground alongside the fence. On July 30, 2014, approximately two weeks after the utility pole that had been removed by T&D was picked up from the edge of Arredondo's property, Arredondo stepped into a hole where the utility pole had been located while mowing her lawn, causing her to fall and injure her knee and back.

After she fell into the hole, Arredondo called AEP and informed it of the hole on her property where the utility pole had been located. AEP responded to the call by sending a service technician to investigate and take pictures of the hole, which was the size and diameter of a hole caused by the removal of a utility pole. Shortly after arriving at the property, the AEP service technician filled the hole with dirt.

Arredondo sued AEP, T&D, and Techserv, alleging they possessed the easement and created a defect on the easement when they removed the pole and failed to fill the hole or otherwise warn of its existence. Arredondo alleged AEP, T&D, and Techserv were negligent, negligent per se, and grossly negligent. AEP, T&D, and Techserv each filed motions for traditional and no-evidence summary judgment, which the trial court granted in separate orders.

This appeal followed.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017).

"After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof

at trial." TEX. R. CIV. P. 166a(i). If the nonmovant brings forward more than a scintilla of probative evidence raising a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *see* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id*. at 601 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

"A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *see also* TEX. R. CIV. P. 166a(c). A movant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). "Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a fact issue to defeat the motion for summary judgment." *Briggs v. Toyota Mfg. of Texas*, 337 S.W.3d 275, 282 (Tex. App.—San Antonio 2010, no pet.).

"When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). "[I]f a no-evidence motion for summary judgment and a traditional motion for summary judgment are filed which respectively asserts the plaintiff has no evidence of an element of its claim and alternatively asserts that the movant has conclusively negated that same element of the claim, we address the no-evidence motion for summary judgment first." *Williams v. Parker*, 472 S.W.3d 467, 469–70 (Tex. App.—Waco 2015, no pet.). If, however, the traditional motion for summary

judgment challenges a cause of action for a reason independent of and unrelated to an element challenged in the no-evidence motion, we first review the independent argument raised in the traditional motion for summary judgment because it would be unnecessary to address whether a plaintiff met his burden as to the no-evidence challenge if the cause of action is barred as a matter of law. *See Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 n.2 (Tex. App.—Waco 2012, no pet.) (concluding "if the traditional motion is based on the legal question of whether the plaintiff is asserting a recognized legal claim, we must first address that issue before proceeding to review a judgment based on a no-evidence motion for summary judgment which purports to attack elements of the alleged claim").[3]

**SUMMARY JUDGMENT AS TO T&D**

**A. T&D's Motions for Summary Judgment and Arredondo's Contentions**

In its traditional motion for summary judgment, T&D asserted that despite Arredondo's claims for negligence and negligence per se, Arredondo's allegations sound in premises liability, and the evidence conclusively shows T&D did not have any actual or constructive knowledge of the hole on the property. T&D also asserted that even if negligence is a viable cause of action in this case, the evidence conclusively shows T&D did not have any legal duty to Arredondo. In its no-evidence motion for summary judgment, T&D asserted Arredondo's claims all fail because Arredondo could not produce more than a scintilla of evidence raising a genuine issue of material fact as to essential elements of her claims. Specifically, T&D asserted Arredondo had no evidence

---

[3] *See also Avery v. Guadalupe Cty. Appraisal Dist.*, No. 04-16-00572-CV, 2017 WL 1337640, at *3 (Tex. App.—San Antonio Apr. 12, 2017, pet. denied) (mem. op.) (addressing first arguments raised in the traditional motion for summary judgment because the traditional motion asserted grounds different from the grounds asserted in the no-evidence motion); *TC & C Real Estate Holdings, Inc. v. Sherrod*, No. 10-13-00385-CV, 2014 WL 4161763, at *2 (Tex. App.—Waco Aug. 21, 2014, pet. denied) (mem. op.) (noting the general rule that a no-evidence motion should be addressed first "does not apply when the no-evidence motion for summary judgment and the traditional motion for summary judgment are not on the same grounds"); *United Genesis Corp. v. Brown*, No. 04-06-00355-CV, 2007 WL 1341358, at *3 (Tex. App.—San Antonio May 9, 2007, no pet.) (mem. op.) (addressing first an argument raised in the traditional summary judgment motion that a claim was barred as a matter of law).

that T&D knew or should have known of the hole on the property, that T&D owed Arredondo a duty, that T&D violated a statute, that T&D's acts or omissions constituted an extreme risk of harm, or that T&D had any actual, subjective awareness of the risk involved.

On appeal, as in the trial court, Arredondo contends the existence of genuine issues of material fact as to each challenged element of her claims preclude summary judgment. Arredondo argues she brought a viable negligence claim against T&D, and that even if she did not, she nonetheless presented evidence raising a fact issue as to a premises liability claim. T&D argues that Arredondo misunderstands the distinction between ordinary negligence and premises liability, and that Arredondo's claim sounds in premises liability, not ordinary negligence.

## B. Nature of Arredondo's Claim: Ordinary Negligence vs. Premises Liability

We first address the parties' disagreement as to the nature of Arredondo's claim because it would be fruitless to address whether Arredondo defeated a no-evidence challenge to a nonviable cause of action.

T&D argued in its traditional motion for summary judgment and argues on appeal that "[t]he claim of a person injured by the condition on property is a premises-liability claim." However, as the supreme court has explained, the application of premises liability to an injury arising from a property condition depends not on the nature of the condition, but on the party against whom liability is sought. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644-45 (Tex. 2016). In *Occidental*, the supreme court discussed the two negligence-based claims one could have against a property owner or possessor when injured on another's property:

> Depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply. Although premises liability is itself a branch of negligence law, it is a "special form" with different elements that define a property owner or occupant's duty with

respect to those who enter the property. Under premises-liability principles, a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances. That duty generally runs with the ownership or control of the property.

*Id.* (citations omitted).

However, liability for a premises condition may arise not only from ownership or control of the property, but also from one's role in creating the dangerous condition in the first instance. *Id.* at 645. The supreme court explained in *Occidental* that "the creator of a dangerous [property] condition can remain liable for the condition even after relinquishing control of the property." *Id.* "When the property's dangerous condition is caused or created by another, an independent claim against the other may lie in negligence." *Id.* at 642. This principle is found in Section 385 of the Second Restatement of Torts, which states:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

RESTATEMENT (SECOND) TORTS § 385 (1965); *see also Occidental*, 478 S.W.3d at 646. Thus, an actor such as an independent contractor or servant acting on behalf of the property owner or possessor may be held liable under ordinary negligence for creating a dangerous premises condition even after he is no longer in control of the property. *Occidental*, 478 S.W.3d at 646-47. It has long been recognized that ordinary negligence principles apply to an allegation that a party not in possession or control of the premises acted negligently in creating a dangerous property condition. *See id.* at 642, 645-47; *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 424 (Tex. 2011) (noting that "general negligence principles apply" to a contractor's negligent creation of a dangerous premises condition); *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986) ("[A]

- 7 -

private person who has created the dangerous condition may be liable even though not in control of the premises at the time of injury."); *Strakos v. Gehring*, 360 S.W.2d 787, 790-94, 803 (Tex. 1962) (holding contractor who no longer controlled the premises was liable for an injury arising out of a premises condition he created based on "the basic questions of negligence and proximate cause" and his "failure to use ordinary care" in performing the work).

In *Strakos*, the plaintiff severely injured his leg when he stepped into a hole that had been created by the removal of a fence post during the relocation of a fence next to a roadway. *Strakos*, 360 S.W.2d at 788. The county had contracted Gehring to relocate the fences on both sides of the roadway due to a planned widening of the road. *Id.* Gehring did not fill the hole or erect a sign or other device to warn of its existence after he moved the fence, and the hole was virtually hidden by vegetation. *Id.* at 789. After the jury found Gehring liable, the court of civil appeals reversed the trial court's judgment as to Gehring on the grounds that Gehring had no duty regarding the hole he created once the work was accepted as completed. *Id.* The supreme court reinstated the trial court's judgment and held Gehring was liable under negligence principles for the dangerous property condition he created, stating "[t]he fact that one who assumes control over a dangerous condition left by a contractor may be liable for injuries resulting therefrom does not necessarily mean that he who creates the danger should escape liability." *Id.* at 788, 790.

In this case, Arredondo stepped into a hole that allegedly was caused by T&D's removal of a utility pole. In response to T&D's motion for summary judgment, Arredondo presented evidence that T&D, as a contractor working for AEP, was directed by AEP to remove a utility pole on the property, and that T&D had a duty to the public to either fill in a hole created by its removal of a utility pole or warn of its existence. T&D's alleged failure to fill the hole occurred while T&D was performing work on the property on behalf of AEP, an electric utility with a statutory right of control over the property with regard to the electric utility poles. *See* TEX. UTIL. CODE ANN.

§ 181.042 (West 2007) ("An electric utility has the right to construct, maintain, and operate lines over, under, across, on, or along a state highway, a county road, a municipal street or alley, or other public property in a municipality."). Thus, Arredondo's allegations and the evidence in the record show T&D removed the pole on behalf of a possessor of land, i.e., AEP, and the injury occurred after T&D completed its work and left the property. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 473 (Tex. 2017); RESTATEMENT (SECOND) OF TORTS § 328E(c) (1965) (noting that a possessor of land is not merely one who occupies it, but also one with a right to occupy it).

As would be required under premises liability, T&D did not produce any evidence showing it continued to exercise control or maintain a right of control over the property after its employees completed the work order and left the job site, or that it possessed or owned the property at the time of Arredondo's injury. *Cf. United Scaffolding*, 537 S.W.3d at 477-79 (Tex. 2017) (holding personal injury suit against scaffolding contractor sounded in premises liability, not ordinary negligence, where contractor maintained the right to control the scaffold where the plaintiff fell through a hole). Because the record shows T&D did not have control over the property when Arredondo was injured and T&D removed the pole as a contractor for AEP, thereby creating a dangerous condition, we conclude Arredondo's claim against T&D for creating the hole and failing to fill it or warn of its existence sounds in ordinary negligence, not premises liability. *See Occidental*, 478 S.W.3d at 646-47; *Strakos*, 360 S.W.2d at 790.

## C. Remaining Summary Judgment Grounds

Having concluded that Arredondo's allegations against T&D sound in ordinary negligence, not premises liability, we turn to the remaining arguments asserted in T&D's traditional and no-evidence motions for summary judgment, all of which challenge elements of Arredondo's negligence, negligence per se, and gross negligence claims.

### 1. **Negligence**

To establish negligence, a party must show (1) the existence of a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach. *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 611 (Tex. App.—Corpus Christi 2005, pet. denied). Regarding Arredondo's negligence claim, T&D asserted in its no-evidence motion for summary judgment that Arredondo could produce no evidence T&D owed a duty to Arredondo regarding the hole, and asserted in its traditional motion for summary judgment that T&D had no duty as a matter of law.

Contrary to T&D's assertions, as explained above, a contractor such as T&D has a duty to warn of or make safe dangerous premises conditions it creates while performing work for one with a right to control the property, and may remain liable for injuries arising out of a dangerous condition it creates even after finishing the work and leaving the premises. *See Occidental*, 478 S.W.3d at 646-47; *Strakos*, 360 S.W.2d at 790-94. Arredondo produced evidence showing T&D received a work order from AEP to remove a utility pole from the easement on Arredondo's property and that T&D removed the utility pole and marked the work order as completed on December 2, 2013. The evidence further shows the hole Arredondo stepped in was at the same location where the utility pole had been and was the same size and diameter as a hole produced by the removal of a utility pole.

Moreover, T&D had a contractual obligation to exercise care in the performance of its work. AEP's General Terms and Conditions for Labor and Services, incorporated into the contract between AEP and T&D, provided: "Contractor shall perform the Work in a safe and careful manner, . . . and use such safety devices and methods as are necessary to protect . . . the public from bodily injury and property damage." Additionally, the Supplementary Terms and Conditions for Distribution Construction and Maintenance Contracts, also incorporated into the contract

between AEP and T&D, provided: "When Work is performed on private property, Contractor shall notify owner and/or tenants thereof. Contractor shall use its best efforts to arrange for the completion of Work to be with the least inconvenience practicable to such owner/tenants. Work performance on private property shall be done as expeditiously as possible and the premises restored immediately."

Accordingly, we conclude as a matter of law that T&D owed a duty to either warn of or make safe the hole it created by removing the utility pole, which Arredondo allegedly stepped in on July 30, 2014.[4] "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Accordingly, we conclude the trial court erred by granting summary judgment as to Arredondo's negligence claim against T&D.[5]

### 2. Negligence Per Se

"Negligence per se is a tort concept where a plaintiff establishes a breach of a legal duty based on the violation of a statute that was designed to prevent an injury to that class of persons to which the plaintiff belongs." *Carrera v. Yañez*, 491 S.W.3d 90, 94 (Tex. App.—San Antonio 2016, no pet.). Under negligence per se, courts "adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person." *Moughon v. Wolf*, 576 S.W.2d 603, 604

---

[4] Whether T&D breached its duty by failing to fill or warn of the hole and whether the hole Arredondo stepped in was the same hole created by T&D are separate issues from the issue of whether T&D owed a legal duty to warn of or make safe the hole it created when it removed the utility pole.

[5] Both Arredondo and T&D's briefs contain arguments regarding whether Arredondo presented evidence showing T&D breached its duty of reasonable care. However, T&D's motion for summary judgment does not contain any assertion that Arredondo could produce no evidence of breach; T&D made this assertion for the first time in its reply to Arredondo's response to the motion for summary judgment. Because a trial court cannot grant summary judgment on grounds raised in a reply in support of a motion for summary judgment and not included in any supplemental or amended motion for summary judgment, we do not discuss whether Arredondo presented evidence raising a fact issue as to the element of breach. *See Mei-Chiao Chen Wu v. City of San Antonio*, No. 04-10-00836-CV, 2013 WL 4084721, at *5-*6 (Tex. App.—San Antonio Aug. 14, 2013, pet. denied) (mem. op.); *Staller v. Serv. Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039, at *4 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.).

(Tex. 1978). "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

Regarding Arredondo's negligence per se claim, T&D in its no-evidence motion for summary judgment asserted Arredondo had neither alleged T&D violated a specific statute nor produced evidence it had violated a statute. In her response to T&D's motion for summary judgment, Arredondo asserted T&D has a nationally recognized duty to provide a safe workplace that is free from hazards and cited a provision of the federal labor code that states, "Each employer . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). This provision of the labor code is explicitly designed to protect employees, and Arredondo is not an employee of T&D. *See Wal-Mart Stores, Inc. v. Seale*, 904 S.W.2d 718, 720 (Tex. App.—San Antonio 1995, no writ) (noting that violations of federal safety rules designed to protect employees do not establish negligence per se where the injured party was not an employee).

Accordingly, we conclude Arredondo failed to present any evidence T&D violated a statute that was designed to prevent an injury to the class of persons to which Arredondo belongs. Therefore, the trial court did not err by granting summary judgment as to Arredondo's negligence per se claim against T&D.

### 3. Gross Negligence

Gross negligence consists of both objective and subjective elements: "extreme risk" and "actual awareness." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). A plaintiff must show by clear and convincing evidence that (1) "when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of

risk, considering the probability and magnitude of the potential harm to others" and (2) "the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). "Under the objective component, 'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *Id.* We examine this risk "prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). To satisfy the subjective prong, a plaintiff "must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999).

T&D in its no-evidence motion for summary judgment asserted Arredondo could produce no evidence that T&D's acts or omissions constituted an extreme risk of harm or that T&D had any actual, subjective awareness of the risk involved.

The objective element requires the plaintiff to prove that "when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *U-Haul Int'l*, 380 S.W.3d at 137 (emphasis added). In support of the objective element, Arredondo points to the deposition testimony of AEP employees Jose Ramirez, Daniel Garcia, and Roel Lopez. Ramirez, the service technician who responded to Arredondo's call reporting that she stepped into a hole on her property, testified utility workers and contractors have a duty to perform their jobs in a safe and reasonable manner because if they do not, there is an extreme risk of harm not only to the crew but to the general public. Ramirez testified he would never leave exposed a hole like the one Arredondo stepped in because it would be unsafe, and further affirmed that a person stepping into the hole is exactly the risk that an exposed hole poses. Ramirez further testified that, based on his

years of experience, he had no explanation and could not think of any reason as to why the hole created by the removal of a utility pole was not filled in, and, based on his training and experience, considered it unacceptable for a utility worker to leave a hole like the one Arredondo stepped in without either filling it in or marking it before leaving the work site. Garcia testified that a professional utility contractor would know to fill a hole caused by the removal of a utility pole or otherwise make it safe, and that such a hole would be a fall hazard. Garcia further testified that due to the nature of utility work, there is a strong emphasis on safety to the general public because improperly performed work can be lethal. Garcia agreed that a utility contractor that performs its work in an unsafe manner creates an extreme risk to others. Lopez testified the expectation for a utility contractor when removing a utility pole is to either cover the hole caused by the pole's removal or warn of it—regardless of whether the contractor leaves the pole at the site. Lopez further testified that unsafe utility operations is very dangerous and can result in serious injuries, and that failing to provide for the safety of others on a job site is very dangerous.

We acknowledge that the above testimony supports the notion that improperly performed utility work, as a general matter, can be very dangerous, can result in serious injuries or death, and can pose an extreme risk to others. This is because utility work involves a wide range of activities, including installing and maintaining electrical lines and, as here, performing underground distribution line construction. However, the testimony Arredondo points to does not state, specifically, that failing to fill in or warn of a hole caused by the removal of a utility pole from a residential yard poses an extreme risk of harm to others or can be lethal. Rather, the most that can be adduced from the above testimony is that failing to fill in or warn of a hole caused by the removal of a utility pole from a residential yard amounts to a fall hazard. However, the fact that conduct is unsafe, or even constitutes a "serious safety hazard," does not necessarily establish that the conduct constitutes an extreme risk, i.e., a risk so great as to make it highly probable that harm

would follow. *See City of Dalhart v. Lathem*, 476 S.W.3d 103, 109 (Tex. App.—Amarillo 2015, pet. denied) (citing *Wal–Mart Stores v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993)).

Accordingly, even when taking as true all evidence favorable to Arredondo and indulging every reasonable inference and resolving any doubts in Arredondo's favor, we conclude Arredondo failed to present evidence raising a genuine issue of material fact that T&D's alleged failure to fill the hole caused by the removal of the utility pole involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Because Arredondo failed to produce evidence raising a fact issue as to the objective element of gross negligence, we need not address the subjective element of gross negligence.

## SUMMARY JUDGMENT AS TO AEP

### A. AEP's Motions for Summary Judgment and Arredondo's Contentions on Appeal

AEP filed a traditional motion for summary judgment and a no-evidence motion for summary judgment. In its traditional motion for summary judgement, AEP asserted the evidence conclusively established it did not retain or exercise control over T&D's work methods, and therefore AEP owed no legal duty to Arredondo. In its no-evidence motion for summary judgment, AEP asserted Arredondo could produce no evidence that (1) AEP owed a legal duty to Arredondo, (2) AEP breached any duty to Arredondo, or (3) Arredondo's injuries were proximately caused by any act or omission of AEP. In her response to AEP's motions for summary judgment, Arredondo argued AEP owed her a legal duty under three separate theories: (1) AEP owed a duty as an easement holder, (2) AEP had a contractual right to control T&D's work, and (3) the utility work performed by T&D was inherently dangerous. Arredondo further argued AEP breached its duty by allowing the hole to remain on the property and that the hole foreseeably caused her injuries.

On appeal, Arredondo repeats the arguments made in her response to AEP's motions for summary judgment, contending AEP owed a legal duty as an easement holder, AEP owed a duty

because it had a contractual right to control T&D, and AEP owed a duty because the work T&D performed was inherently dangerous. In response, AEP argues it did not have contractual control over T&D and that removing a utility stub pole is not an inherently dangerous activity.

### B. Duty Arising from a Contractual Right to Control the Actions of T&D

Arredondo argues AEP is liable for her injury because AEP retained a contractual right to control T&D's actions.

#### 1. Applicable Law Regarding Duty for Independent Contractor's Actions Arising from Control

Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the [independent] contractor or his servants." *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 718 (Tex. App.—Fort Worth 2006, no pet.) (quoting RESTATEMENT (SECOND) OF TORTS § 409). However, an exception to the general rule "applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master" under traditional master-servant law. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). Stated differently, "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997) (quoting RESTATEMENT (SECOND) OF TORTS § 414). Under this exception, an employer "is subject to liability if he knows or should know that the [independent contractor] ha[s] carelessly done [its] work in such a way as to create a dangerous condition, and [the employer] fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the [independent contractor] to do so." RESTATEMENT (SECOND) OF TORTS § 414 cmt. b; *accord Fifth*

*Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006) (stating that under § 414, "an employer can be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the damage").

Therefore, the employer of an independent contractor is required "to exercise any retained supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." *Olivo*, 952 S.W.2d at 528 (internal quotation marks omitted). "[T]o be liable for negligence, [the employer's] supervisory control must relate to the condition or activity that caused the injury." *Id.* Furthermore, for the exception to apply,

> the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c.). In other words, "an employer may become liable for the independent contractor's tortious acts only if the employer controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club*, 196 S.W.3d at 792.

"If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (quoting *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999)). "It is the [contractual] right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner." *Id.* (quoting *Diaz*, 9 S.W.3d at 804). Whether an employer has a contractual right to control an

independent contractor's work is generally a question of law for the court. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004).

## 2. Application

In support of her contention that AEP retained the right to control the work performed by T&D, Arredondo points to the following pertinent contractual provisions in the contract between AEP and T&D:

- Contractor [T&D] shall have an authorized representative at the Site to whom Owner [AEP] may give instructions at all times when Work is being performed.

- When work is performed on private property . . . Contractor shall use its best efforts to arrange for the completion of Work to be with the least inconvenience practicable to such owner/tenants. Work performance on private property shall be done as expeditiously as possible and the premises restored immediately.

Although many of the contractual provisions cited by Arredondo do not relate to the specific condition or activity from which her injuries arose,[6] the provision requiring T&D to "have an authorized representative at the Site to whom [AEP] may give instructions at all times when Work is being performed" essentially gave AEP the right and discretion to control the means, methods, and details of T&D's work to the extent that T&D was not entirely free to do its work in its own way. Moreover, the contractual provision that requires T&D to restore the premises immediately after performing work on private property directly relates to the source of Arredondo's injuries: T&D's alleged failure to fill in the hole caused by its removal of a utility

---

[6] In addition to the foregoing provisions, Arredondo points to contractual provisions that show: (1) AEP controls the type and category of material that T&D may use; (2) AEP may take possession or use any part of T&D's work at any time; (3) AEP requires T&D to implement AEP's inspection system on a specified timetable by specified T&D employees, requiring a T&D employee to manage, coordinate and enforce AEP's safety program; (4) AEP requires T&D to conduct a safety briefing before commencing work, requires that it be put in writing, that all crew must sign in for attendance, outlines that topics that must be covered, and provides an AEP form that can be used to execute this requirement; (5) AEP outlines the required uniforms that T&D's employees must wear while working; (6) AEP controls the language spoken by T&D employees and subcontractors, requiring that all T&D employees speak English; and (7) AEP has complete control over the selection of T&D employees, specifying who can or cannot work as an T&D employee, the specific training that is required for T&D employees, requiring that certain types of employees be used under different circumstances, and all T&D employees are subject to inspection by AEP at any time.

pole. *See Victoria Elec. Co-op., Inc v. Williams*, 100 S.W.3d 323, 327 (Tex. App.—San Antonio 2002, pet. denied) (noting "an employer is not liable for the negligence of an independent contractor unless the employer retains the right of control . . . over the condition or activity that causes the injury"). According to Arredondo's allegations, T&D left the hole unfilled and therefore did not restore the premises immediately. Thus, AEP retained control over the method and means of T&D's work as it related to removing the utility pole on Arredondo's property by specifically requiring that, when performing work on private property, the "premises [be] restored immediately," and by requiring T&D to have an authorized representative at the site to whom AEP could give instructions at all times while work was being performed. Accordingly, we conclude that as a matter of law, AEP had a duty arising from a contractual right to control the aspect of T&D's work that allegedly caused Arredondo's injury.

Because a fact issue exists as to whether the hole Arredondo stepped in was caused by T&D's removal of a utility pole, a fact issue also exists as to whether the duty AEP owed pursuant to its contractual right of control gives rise to liability in this case. Because we conclude AEP owed a duty pursuant a contractual right of control, it is unnecessary for us to discuss Arredondo's arguments that AEP owed a duty as one with a right to control the premises or because the work performed by T&D was inherently dangerous.

### 3. Breach and Proximate Causation

In addition to asserting it owed no legal duty in its no-evidence motion for summary judgment, AEP also asserted Arredondo could produce no evidence AEP breached any duty to Arredondo or that AEP's acts or omissions proximately caused Arredondo's injuries.

Arredondo attached to her response her own deposition testimony wherein she testified that utility workers removed the utility pole and laid it on the ground between her fence and the street, and that she later stepped in the hole where the pole had been while she was mowing the grass.

Arredondo further testified she received several injuries from falling into the hole, including to her back and her left leg. Arredondo also presented the deposition testimony of Ramirez and Carrera. Ramirez testified the hole in Arredondo's yard looked like it was a hole caused by the removal of a utility pole and was located in the same location as the utility pole removed by T&D. Ramirez also testified a hole caused by the removal of a utility pole should not be left exposed because it is unsafe. Carrera testified that to leave a hole caused by the removal of a utility pole without filling it in or warning of it would be a risk and hazard to anyone walking next to the street. Taking as true all evidence favorable to Arredondo and indulging every reasonable inference and resolving any doubts in Arredondo's favor, we conclude genuine issues of material fact exist as to whether AEP breached the duty it owed as T&D's employer with a contractual right to control T&P's work and whether this breach proximately caused her injuries.[7]

Accordingly, because Arredondo produced evidence raising a genuine issue of material fact as to each of the challenged elements in AEP's no-evidence motion for summary judgment, we conclude the trial court erred by granting Arredondo's no-evidence motion for summary judgment as to her claims for negligence and gross negligence.[8] AEP in its traditional motion for summary judgment argued the evidence established AEP did not retain a right to control T&D's work and presented testimony from AEP and T&D employees that no AEP employee was at the site when T&D was doing work on the property, T&D knew how to remove a utility pole and no one had to tell them how to do it, and it was the responsibility of the crew working the job to warn of a hole left on the property. However, as previously discussed, Arredondo presented evidence

_____

[7] AEP argues on appeal that Arredondo never responded to AEP's assertion in its no-evidence motion challenging the element of proximate cause. However, Arredondo asserted in her response that it was foreseeable that leaving a hole on Arredondo's property could cause injuries and that the hole did in fact cause her injuries and produced evidence in support thereof.

[8] Unlike T&D, AEP in its motions for summary judgment did not challenge any element of gross negligence apart from the core elements of ordinary negligence.

showing AEP retained a contractual right to control T&D's work. Thus, we conclude the trial court erred by granting AEP's traditional motion for summary judgment. Moreover, because AEP in its motions for summary judgment did not challenge Arredondo's negligence per se claim and the summary judgment evidence does not conclusively defeat the claim or otherwise render it invalid, we conclude the trial court erred by granting summary judgment as to Arredondo's claim for negligence per se. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297-98 (Tex. 2011) (holding that granting summary judgment on a claim not addressed in the summary judgment motion is generally reversible error, but that error may be harmless if the omitted claim is precluded as a matter of law by other grounds raised in the case).

SUMMARY JUDGMENT AS TO TECHSERV

### A. Techserv's Motions for Summary Judgment and Arredondo's Contentions on Appeal

In its traditional motion for summary judgment, Techserv asserted the evidence conclusively established it did not owe Arredondo a legal duty, and even if it did owe a legal duty, it did not breach any duty to Arredondo. In its no-evidence motion for summary judgment, Techserv asserted Arredondo could produce no evidence that Techserv owed a legal duty to Arredondo or that Techserv breached any duty to Arredondo. With regard to Arredondo's negligence per se claim, Techserv asserted there was no evidence it had violated a statute. With regard to Arredondo's gross negligence claim, Techserv asserted there was no evidence its acts or omissions constituted an extreme risk likely to lead to serious injury to others or that Techserv knew of any peril but demonstrated that it did not care. Techserv further asserted there was no evidence to support Arredondo's claim for exemplary damages because, in addition to there being no evidence to support gross negligence, there was no evidence Techserv's acts or omissions amounted to either fraud or malice. Arredondo filed a response to Techserv's motions for summary judgment. However, Arredondo did not request that her response be included in the clerk's record

for this appeal. Included in the clerk's record is Arredondo's supplemental response to Techserv's motions for summary judgment. In the supplemental response, Arredondo presented the testimony of T&D employee Robert Ramos and Techserv employee Richard Luna and asserted a genuine issue of material fact precluded summary judgment.

On appeal, Arredondo contends Techserv owed a legal and contractual duty to her, that Techserv breached its duty by failing to properly inspect the property where the pole was removed, and that a genuine issue of material fact exists as to her gross negligence claim.

## B. Arredondo Failed to Include Her Response in the Clerk's Record and Her Supplemental Response was Insufficient to Defeat Summary Judgment

Techserv argues we should affirm the trial court's judgment because Arredondo failed to present the full summary judgment record considered by the trial court.

To obtain a reversal of a trial court's order granting summary judgment, an appellant must provide the appellate court with the relevant summary judgment evidence considered by the trial court. *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam). "Although [the summary judgment movant] bears the burden to prove its summary judgment as a matter of law, on appeal [the nonmovant] bears the burden to bring forward the record of the summary judgment evidence to provide appellate courts with a basis to review his claim of harmful error." *Id.* "If the pertinent summary judgment evidence considered by the trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment." *Id.* at 550.

Thus, when a party appeals from an order granting a no-evidence motion for summary judgment, she must include within the clerk's record not only the summary judgment motion and the exhibits attached thereto, but also her own response to the summary judgment motion and attached exhibits. *See Sung Sik Choi v. Juggernaut Transportation, Inc.*, No. 05-16-01386-CV,

2017 WL 2729907, at *2 (Tex. App.—Dallas June 26, 2017, no pet.) (mem. op.) (presuming omitted response to no-evidence motion for summary judgment supported trial court's judgment where appellants appealed from the trial court's order granting a no-evidence motion for summary judgment but did not include their response to the motion for summary judgment in the clerk's record); *Habanero, Inc. v. Schweitzer*, No. 14-11-00339-CV, 2012 WL 19671, at *1 (Tex.—App. Houston [14th Dist.] Jan. 5, 2012, no pet.) (mem. op.) (presuming summary judgment motions supported the trial court's judgment where appellant failed to include his response to the summary judgment motions in the clerk's record).

Although Arredondo included in the clerk's record her supplemental response to Techserv's motions for summary judgment, the supplemental response addressed only the element of breach, i.e., whether Techserv properly inspected the property to ensure the hole was filled. As discussed above, however, Techserv sought summary judgment as to Arredondo's negligence claim by asserting there was no evidence of either legal duty or breach. When an appellant's response to a no-evidence motion for summary judgment does not address an element of a claim challenged in the motion, she may not raise for the first time on appeal arguments in support of the unaddressed elements. *Benson v. Indymac Mortg. Servs.*, No. 02-13-00197-CV, 2014 WL 787851, at *2 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.). Moreover, although Arredondo in her brief cites to her response to AEP's motions for summary judgment and the evidence attached thereto, "[t]he evidence raised by [an] [a]ppellant in response to another party's motion for summary judgment is not proper evidence to be considered when reviewing a separate and independent motion for summary judgment." *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 745 (Tex. App.—El Paso 2013, no pet.).

Techserv in its no-evidence motion for summary judgment challenged one or more essential elements of each claim brought by Arredondo. Because Arredondo failed to include in the appellate record her response to Techserv's no-evidence motion for summary judgment and her supplemental response was inadequate to preclude summary judgment on any of her claims, we must conclude the omitted response supports the trial court's judgment.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting summary judgment as to Arredondo's negligence per se claim and gross negligence claim against T&D, reverse the trial court's order granting summary judgment as to Arredondo's negligence claim against T&D, and remand that claim for further proceedings. As to AEP, we reverse the trial court's order granting AEP's motions for traditional and no-evidence summary judgment and remand Arredondo's negligence, negligence per se, and gross negligence claims against AEP for further proceedings. As to Techserv, we affirm the trial court's order granting Techserv's traditional and no-evidence motions for summary judgment.

Irene Rios, Justice