**Opinion filed July 11, 2019**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00233-CV**

_____

**JACKIE WOMACK, INDIVIDUALLY, AND JACKIE WOMACK DRILLING COMPANY; WILLARD COGDELL AND LA NELL COGDELL; AND JAMES R. CAVENDER, INDIVIDUALLY AND D/B/A JAMES R. CAVENDER INVESTMENT COMPANY, LTD., Appellants**

**V.**

**ONCOR ELECTRIC DELIVERY COMPANY LLC, Appellee**

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 23,602**

**M E M O R A N D U M   O P I N I O N**

This is an appeal in a suit to recover for damage to property from a grass fire. Jackie Womack, individually, and Jackie Womack Drilling Company; Willard Cogdell and La Nell Cogdell; and James R. Cavender, individually and d/b/a James

R. Cavender Investment Company, Ltd., sued Oncor Electric Delivery Company LLC, alleging that sparks from Oncor's electrical lines started the fire. The trial court granted summary judgment in favor of Oncor and ordered that Appellants take nothing on their claims. We affirm.

Oncor owns electrical distribution lines and meter poles in Snyder, Scurry County, Texas. Some of these electrical lines run parallel to Block Line Road and are located between the road and the fence line of the Cavender Ranch. A portion of Oncor's electrical lines also run near a "caliche-surface entrance" to the Cavender Ranch.

On February 23, 2008, Lill Gerald Crawford was driving on Block Line Road, pulling an empty trailer to the cotton gin. Crawford was traveling at only thirty miles per hour because a very high wind was blowing from the west and hitting the trailer broadside. Crawford saw the electrical lines on Block Line Road moving like "jump ropes" and, at several locations, saw sparks when the lines touched. At one such location, he saw a small, table-sized fire underneath the electrical lines. Crawford could not specify the exact location on Block Line Road where he saw the fire, but he knew that it was "pasture land."

The fire was already burning when Crawford drove by it, and he did not actually see what caused the fire. However, in Crawford's opinion, "[i]t was obvious" that the sparks from the electrical lines caused the fire because "the fire was there right underneath the line" and "[n]o other cause of the fire was apparent." Crawford admitted that he had no training or experience as a "fire investigator."

Crawford unsuccessfully attempted to call the fire department to report the fire and then drove to the cotton gin. The manager of the cotton gin called the fire department and learned that "several fires" had already been reported that day. Approximately twenty minutes later, Crawford left the cotton gin and retraced his

2

route on Block Line Road. When Crawford reached the location where he originally saw the fire under the electrical lines, he saw "a lot of fire; more fire." According to Crawford, the fire had moved to the east.

A large grass fire burned over 5,700 acres of land in Scurry County on February 23, 2008 (the Snyder Fire). The next day, Garry Parton, a certified wildland fire origin and cause investigator for the Texas Forest Service (TFS), and Bobby Jones, a criminal investigator for the TFS, investigated the cause of the Snyder Fire. During the investigation, Parton and Jones discovered a blown transformer located on a utility pole approximately 300 yards east of Block Line Road. Parton noted the following: (1) that the transformer was a "brownish-red color, which would indicate an enormous heat build-up inside the transformer"; (2) that a "'hot lead' wire connecting the transformer to one of the upper utility lines" had "blown loose or had broken" and, because of the wind, "appeared to have come in contact with the ground or neutral line, causing the transformer to malfunction (blow out)"; (3) that "one of the two ceramic insulators atop the transformer had been 'blown off' due to high intensity heat and electricity" and that broken pieces of the insulator were located "approximately 10 feet northwest of the utility pole"; (4) that a portion of the base of the utility pole had either been "blown off or burnt off" and pieces of charred and burnt wood were found near the utility pole; (5) that a copper ground wire extended the length of the utility pole and, based on the charring pattern on the utility pole, "had come in contact with high, intense heat"; and (6) that "[i]ndicators of an advancing fire as well as flanking fire and backing fire were located at and around the utility pole, indicating the point of origin with the fire advancing in a westernly [sic] direction." Parton concluded that the Snyder Fire "was ignited by intense heat and flying sparks emitted by the transformer."

3

Cyrus A. Posey, the Snyder Fire Marshal, also investigated the cause of the fire. Posey has been a fireman since 1995 and the Snyder Fire Marshal since 2000. Before he began his career as a fireman, Posey was employed by Southwestern Bell as a lineman.

Posey examined the area between Block Line Road and the fence line of the Cavender Ranch, the electrical lines that were located between Block Line Road and the fence line of the Cavender Ranch, and a meter pole connected to those electrical lines located just north of the caliche-surface entrance to the Cavender Ranch. Posey did not see "fire burn" on the ground underneath the electrical lines that he examined, nor did he find "fire burn" on the ground nearby. He also saw no evidence that the "electrical wires within two spans to the north of the caliche-surface entrance" to the Cavender Ranch had "arc or burn marks on the wires." Posey noted that the electrical lines that he examined were "attached to the cross arms in a proper manner" and "had sufficient tension so that one wire could not contact another wire in a high wind and cause a spark." Posey ultimately excluded those electrical lines as a potential cause of the fire.

Posey also examined the area where the transformer was located on the Cavender Ranch and saw that the pole had "burned at its base." Posey "observed nothing that would contradict the opinion" of the TFS that sparks from the transformer caused the Snyder Fire.

"A short time after the fire," Jackie Womack "traveled down Blockline [sic] Road and observed the terrain and places of fire damage." Womack saw that "there was clear and obvious evidence that the fire was located beneath the electrical transmission lines which run parallel to, and just east of, Blockline [sic] Road." Womack concluded that the fire started underneath the electrical lines, moved east with the wind, "went over and around the electrical pole and transformer" on the

Cavender Ranch, and then eventually moved to his property. Womack provided no information to indicate that he had any experience in the investigation of the origins or causes of fires.

Appellants sued Oncor and "Utility Company B" (a utility company that was unknown to Appellants at the time of the lawsuit) for negligence.[1] Appellants alleged that the lines that Crawford observed on the day of the fire were owned by Oncor; that Oncor failed to properly install, maintain, and inspect those lines; and that, as a result, a loose and/or defective electrical wire caused sparks to fall from the lines and ignite a fire in the grass below. In the alternative, Appellants, relying on the doctrine of res ipsa loquitur, asserted that Oncor was liable for their damages because "the character of the accident [was] such that it would not have ordinarily occurred in the absence of the negligence of [Oncor] and the instrumentality causing the accident was under the exclusive management and control of [Oncor]."

Oncor filed a combined no-evidence and traditional motion for summary judgment. In its no-evidence motion, Oncor alleged that there was no evidence (i) that its electrical lines proximately caused the fire, (ii) that it breached any duty, or (iii) that the "character of the accident" and "cause and control" factors, as required by the res ipsa loquitur doctrine, were present. Oncor moved for traditional summary judgment on grounds (i) that it had conclusively established that the transformer caused the fire and that it did not own or control the transformer and (ii) that, as a matter of law, Appellants could not rely on the doctrine of res ipsa loquitur to meet their burden of proving that Oncor's negligence caused the Snyder Fire. The trial court granted summary judgment in favor of Oncor but did not specify the basis for its ruling.

---

[1]In an amended petition, Appellants deleted their claims against Utility Company B.

In four issues, Appellants contend that the trial court erred when it granted either a traditional or no-evidence summary judgment in favor of Oncor. We review a trial court's summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, No. 17-0850, 2019 WL 2147205, at *3 (Tex. May 17, 2019). When we review either a traditional or a no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant, indulging ever reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Id.* We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Exploration, LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014) (per curiam).

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KMS Retail Rowlett, LP*, 2019 WL 2147205, at *3. To defeat a no-evidence motion for summary judgment, the nonmovant must produce at least a scintilla of evidence by which the nonmovant raises a genuine issue of material fact as to each challenged element of a claim or defense. TEX. R. CIV. P. 166a(i); *KMS Retail Rowlett, LP*, 2019 WL 2147205, at *3. "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *KMS Retail Rowlett, LP*, 2019 WL 2147205, at *3.

Generally, when parties move for summary judgment on both traditional and no-evidence grounds, we first consider the no-evidence motion for summary judgment. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). But, if the movant in a traditional motion challenges a cause of action on an independent ground, we consider that ground first because it would be

unnecessary to address whether a plaintiff met his burden as to the no-evidence challenge if the cause of action is barred as a matter of law. *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 n.2 (Tex. App.—Waco 2012, no pet.) (considering traditional motion for summary judgment first because no-evidence motion for summary judgment was "premised on a determination that the traditional motion sought to defeat as a matter of law"); *see also Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383, 391 (Tex. App.—San Antonio 2018, pet. filed) (addressing traditional motion for summary judgment first because "it would be fruitless to address whether [plaintiff] defeated a no-evidence challenge to a nonviable cause of action").

Oncor moved for traditional summary judgment on the ground that the doctrine of res ipsa loquitur did not apply to Appellants' claims as a matter of law. As this appeal is presented to us, if Appellants cannot rely on the doctrine of res ipsa loquitur to establish Oncor's negligence, it is unnecessary to address whether Appellants met their burden as to Oncor's no-evidence challenges. Accordingly, we will consider Oncor's traditional motion for summary judgment first. *See Discount Tire Co. of Tex., Inc. v. Cabanas*, 553 S.W.3d 566, 570–71 (Tex. App.—San Antonio 2018, pet. denied) (concluding that, because legal sufficiency review of the evidence would be affected by res ipsa loquitur doctrine, the applicability of the doctrine must be considered before addressing no-evidence challenge to jury's negligence finding).

In their first and third issues, Appellants contend that the trial court erred when it granted Oncor's traditional motion for summary judgment. Appellants specifically argue that they produced summary judgment evidence that "proved, or at least raised a fact issue[,] that[ ] sparks falling from [Oncor's] power line ignited the fire in question" and that, based on the doctrine of res ipsa loquitur, this evidence was sufficient to create a fact issue as to whether Oncor was negligent. Appellants

7

do not otherwise challenge the trial court's grant of summary judgment on their claim that Oncor's failure to properly install, maintain, or inspect its electrical lines caused the fire.

Res ipsa loquitur, meaning "the thing speaks for itself," is a rule of evidence that allows negligence to be inferred under certain circumstances. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990); *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982). Res ipsa loquitur is not a separate cause of action; rather, it relieves the plaintiff "of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982); *see also Cabanas*, 553 S.W.3d at 570.

The doctrine of res ipsa loquitur is applicable only when (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence and (2) the instrumentality causing the injury was under the defendant's exclusive management and control. *Sterner*, 632 S.W.2d at 573; *Cabanas*, 553 S.W.3d at 570. "The first factor is necessary to support the inference of negligence and the second factor is necessary to support the inference that the defendant was the negligent party." *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974). The plaintiff must produce evidence of both factors. *Id.* at 252. Because it is dispositive, we address only whether Appellants raised a genuine issue of material fact that the instrumentality that caused the Snyder Fire was under Oncor's control.

"Inherent in the [control] factor is the requirement that the defendant be proved to have some causal connection with the plaintiff's injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989). This connection is satisfied by evidence that the defendant was "in control at the time that the negligence inferable

8

from the first factor probably occurred, so that the reasonable probabilities point to the defendant and support a reasonable inference that he was the negligent party." *Id.* The plaintiff is not required to completely eliminate the possibility of other causes of the accident besides the defendant's negligence. *Bell*, 517 S.W.2d at 251. However, the likelihood of other causes "must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." *Id.*; *see also Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 48 (Tex. App.—San Antonio 2005, no pet.).

Res ipsa loquitur "is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury." *Cabanas*, 553 S.W.3d at 571 (quoting *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 846 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). "Where the evidence shows that an accident may have happened as a result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply." *City of Houston v. Church*, 554 S.W.2d 242, 243–44 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *see also Sterner*, 632 S.W.2d at 574 ("When the plaintiff's evidence only shows it is equally probable that the negligence was that of another, the court must direct the jury that plaintiff has not proved his case.").

It is undisputed that the Snyder Fire burned over 5,700 acres, including property owned by Appellants. Therefore, the "instrumentality" for purposes of the "control factor" of the doctrine of res ipsa loquitur is whatever caused the Snyder Fire. *See Smith v. Little*, 626 S.W.2d 906, 908 (Tex. App.—Tyler 1981, no writ) ("The instrumentality in a res ipsa case is the thing that causes the fire."); *see also Bell*, 517 S.W.2d at 252 (noting that "control" condition must be "interpreted in the factual setting of each case").

Oncor produced summary judgment evidence that a transformer on the Cavender Ranch exploded and ignited the Snyder Fire and that Oncor did not control either the transformer or the utility pole on which it was located. Oncor also produced summary judgment evidence that it controlled the electrical lines on Block Line Road that Posey had excluded as a cause of the Snyder Fire. Appellants responded with Crawford's testimony that he saw the electrical lines on Block Line Road swinging in the wind and touching each other, causing sparks, and a fire underneath electrical lines somewhere along Block Line Road. Appellants also relied on Crawford's and Womack's opinions that a fire underneath the electrical lines on Block Line Road caused the Snyder Fire.

The summary judgment evidence established that there were two possible causes of the Snyder Fire—sparks from the blown transformer on the Cavender Ranch that was not under Oncor's control and sparks from electrical lines on Block Line Road that were under Oncor's control. Appellants produced no summary judgment evidence that it was more probable that the fire that Crawford saw under the electrical lines, rather than sparks from the blown transformer, caused the Snyder Fire. Because Appellants failed to raise a genuine issue of material fact that an instrumentality under Oncor's exclusive control caused the Snyder Fire, the trial court did not err when it determined that the doctrine of res ipsa loquitur did not apply as a matter of law. *See Sterner*, 632 S.W.2d at 574 (Because there were two possible defendants, either of which could have been separately negligent in performing its own duty, the doctrine of res ipsa loquitur was not applicable.); *Sanders v. Naes Cent., Inc.*, 498 S.W.3d 256, 261 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding trial court properly granted summary judgment in favor of defendant because res ipsa loquitur was not applicable when there was more than

one potential cause of the accident and there was no evidence that it was more probable the accident was caused by defendant's negligence).

We overrule Appellants' first and third issues in which they challenge the trial court's grant of traditional summary judgment in favor of Oncor. Based on our resolution of these issues, we need not address Appellants' second and fourth issues in which they assert that the trial court erred when it granted Oncor's no-evidence motion for summary judgment. *See* TEX. R. APP. P. 47.1.

We affirm the judgment of the trial court.

JIM R. WRIGHT

SENIOR CHIEF JUSTICE

July 11, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.