**OCCIDENTAL CHEMICAL CORPORATION,**
Petitioner,

v.

**Jason JENKINS, Respondent**

No. 13–0961

Supreme Court of Texas.

Argued September 3, 2015

OPINION DELIVERED:
January 8, 2016

Christopher Patton, Richard A. Smith, Lynn Tillotson Pinker & Cox LLP, Dallas, for Amicus Curiae Chamber of Commerce of the United States of America

Christopher Patton, Richard A. Smith, Thomas C. Kirby, Washington, DC, for Amicus Curiae National Association of Manufacturers

Wencong Fa, Sacramento, CA, for Amicus Curiae Pacific Legal Foundation

Martha Landwehr, Austin, for Amicus Curiae Texas Chemical Council

George S. Christian, Austin, for Amicus Curiae Texas Civil Justice League

Christopher Patton, Lynn Tillotson Pinker & Cox, LLP, Dallas, Richard A. Smith, for Amicus Curiae The American Chemistry Council

Barry N. Beck, David Wayne Lauritzen, Rick G. Strange, Cotton Bledsoe Tighe & Dawson, P.C., Midland, Deborah G. Hankinson, Joseph B. Morris, William Richard Thompson II, Hankinson LLP, Dallas, for Petitioner

Charles Randall 'Chad' Flores, David M. Gunn, Erin Hilary Huber, Russell S. Post, Beck Redden, LLP, Houston, Douglas W. Alexander, Wallace B. Jefferson, Alexander Dubose Jefferson & Townsend LLP, Austin, Jason A. Itkin, Cory D. Itkin, Kurt Brynilde Arnold, Arnold & Itkin LLP, Houston, for Respondent

Justice Devine delivered the opinion of the Court.

A claim against a property owner for injury caused by a condition of real property generally sounds in premises liability. That liability typically ends with the property's sale. When the property's dangerous condition is caused or created by another, an independent claim against the other may lie in negligence and that claim, unlike the premises-liability claim against the owner, does not necessarily end with the property's sale. The issue in this cause is whether that rule also applies to a property owner who creates the dangerous condition—that is, whether the property owner owes both a duty in premises liability to warn of the dangerous condition or make it safe and a duty in negligence to use reasonable care not to create the dangerous condition in the first place.

The court of appeals concluded that a property owner who creates a dangerous condition on its property may be held responsible for injuries under either liability theory, and that the negligence claim, unlike the premises-liability claim, remains viable even after the property owner sells the property and relinquishes control over it. 415 S.W.3d 14, 28–31 (Tex.App.–Houston [1st Dist.] 2013). We conclude, however, that a claim against a previous owner for injury allegedly caused by a dangerous condition of real property remains a premises-liability claim, regardless of the previous property owner's role in creating the condition. Because the previous owner sold the property several years before the plaintiff's accident and did not otherwise owe the plaintiff a duty of care apart from its ownership and control of the property, we reverse the court of appeals' judgment and render judgment that the plaintiff take nothing.

## I

Jason Jenkins was injured in April 2006 while using an acid-addition system at a Bayport, Texas chemical plant. The Bayport plant produces triethylene glycol ("TEG"), a chemical compound with a variety of industrial and commercial uses. Production occurs in a large tank in which the TEG must be maintained at a certain acidity. Technicians at the Bayport plant initially regulated the acidity by manually adding acid or amine to the tank as necessary to adjust the pH level. A device for managing the tank's pH level, referred to in this case as the acid-addition system, was later attached to the tank because it was thought to be a safer process for adding acid. Ironically, this "improvement" caused Jenkins's injury.

The acid-addition system was added to the plant in 1992 by Occidental Chemical Corporation. Occidental's employees used

the device for six years without incident. In 1998, Occidental sold the plant to Equistar Chemicals, L.P., Jenkins's employer. Jenkins's injury occurred in 2006, eight years later. The acid-addition system was thus used by employees of Occidental and Equistar for fourteen years before Jenkins's injury.

The acid-addition system consists of several components: a funnel, funnel cover, acid-addition pot, pressurized nitrogen system, several pipes, and three valves. The first of these valves, the acid-inlet valve, connects the funnel to the acid-addition pot. The second valve connects the acid-addition pot to the pressurized nitrogen system. The third valve connects the pot to the tank. To add acid to the tank a technician removes the funnel's cover adding the desired amount of acid. Opening the first valve drains the acid into the pot. Closing the first valve and opening the second pressurizes the pot's contents. Closing the second valve and opening the third forces the acid into the tank.

On the day of the accident, Jenkins was asked to add acid to the tank. He had not performed this job before and therefore consulted the operating instructions before adding acid to the system. He was asked later in the day to adjust the pH level again because the tank had still not reached the desired level. Unbeknownst to Jenkins, acid apparently remained in the acid-addition system under pressure because when Jenkins opened the acid-inlet valve—the first of the system's three valves—acid was expelled into his face, injuring his eyes.

Jenkins sued Occidental, among others,[1] alleging that Occidental's negligent design of the acid-addition system caused his injuries. Occidental generally denied Jen-

kins's allegations and affirmatively pled two statutes of repose—one governing claims against registered or licensed professionals who design, plan or inspect improvements to real property, and one governing claims against those who construct such improvements. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.008, .009.

The case was tried to a jury. The jury found Occidental's design of, and operating instructions for, the acid-addition system negligent and a proximate cause of Jenkins's injury and determined Jenkins's damages. Regarding Occidental's statute-of-repose defenses, the jury found that the acid-addition system was an improvement to real property that was designed under the supervision of, but not by, a registered or licensed professional. Both parties moved for judgment on the verdict. Concluding that the verdict supported at least one of Occidental's repose defenses, the trial court rendered judgment that Jenkins take nothing.

The court of appeals, however, did not agree that the verdict supported either of Occidental's statute-of-repose defenses. *See* 415 S.W.3d 14, 19–28 (discussing sections 16.008 and 16.009 of the Texas Civil Practice and Remedies Code). Apart from repose, Occidental argued that the court of appeals should affirm the trial court's judgment because Occidental had not breached any duty of care owed to Jenkins. Under this argument, Occidental maintained that Jenkins's claim sounded solely in premises liability, a theory that no longer applied to Occidental as it did not own or control the premises at the time of Jenkins's accident. Again, the court disagreed, reasoning that Jenkins's claim was based on Occidental's negligent

1. Jenkins also sued his employer, Equistar, which was severed from the suit after filing for bankruptcy.

design of the acid-addition system, a theory that survived Occidental's sale of the property and continued independently of any premises-liability claim. *Id.* at 28–31. The court of appeals accordingly reversed and remanded for the trial court to render judgment for Jenkins on the jury's liability and damages findings.

## II

Depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. *Id.* When the injury is the result of the property's condition rather than an activity, premises-liability principles apply. *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d 258, 259 (Tex.1992). Although premises liability is itself a branch of negligence law, it is a "special form" with different elements that define a property owner or occupant's duty with respect to those who enter the property. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). Under premises-liability principles, a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983); *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). That duty generally runs with the ownership or control of the property and upon a sale ordinarily passes to the new owner. *See* RESTATEMENT (SECOND) OF TORTS §§ 351–54 (1965).

According to section 352 of the Second Restatement of Torts, a vendor of land is not ordinarily liable for injuries to a vendee or to third persons caused by a preexisting dangerous condition after the vendee takes possession:

> Except as stated in § 353,[2] a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

*Id.* § 352. The court of appeals here accepted this as a statement of the general rule. 415 S.W.3d at 31 (quoting *Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363, 367–68 (Tex.App.–Houston [1st Dist.] 1994, writ denied)); *accord First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 291 (Tex. App.–Corpus Christi 1990, writ denied) (citing section 352 of the Second Restatement); *Beall v. Lo–Vaca Gathering Co.,* 532 S.W.2d 362, 365 (Tex.Civ.App.–Corpus Christi 1975, writ ref'd n.r.e.) (same). But the court also thought that an exception should be made for dangerous conditions created by the vendor. In this instance, the court reasoned that the conveyance ought not end the former owner's responsibility in the matter. 415 S.W.3d at 29–31.

Because Occidental designed and installed the acid-addition system, the court analyzed Occidental's duty with respect to this improvement as two-pronged: (1) Occidental's duty as the owner of the property on which the dangerous condition existed, and (2) Occidental's duty as the creator or designer of the dangerous condition on the property. *Id.* at 29. Although Occidental

---

2. An exception exists when the vendor actively conceals or fails to disclose a known dangerous condition. *Id.* § 353.

was no longer responsible for the property's dangerous condition as owner, under the court's dual-role analysis, Occidental remained responsible as its creator or designer:

Here, Occidental played two distinct roles—the role of the designer of the faulty improvement, who was subject to liability, and the role of the former premises owner, who was not subject to liability. But the jury's liability finding against Occidental relies on the first role and not the second role. Thus, Occidental is subject to liability only for its design work.

We see no reason why the fact that Occidental's acid addition system was annexed to real property would alleviate Occidental from duties otherwise owed with respect to the safety of the system's design.

*Id.* at 29–30 (footnote omitted). The court thus assumed that a property owner who creates a dangerous condition on its property has both a premises-liability duty to make safe or warn about the dangerous condition and a distinct ordinary-negligence duty not to create the dangerous condition in the first place.

■ Occidental argues that its only duty was in premises liability (to make the chemical plant safe or warn of its dangers) and that duty passed to Equistar with the plant's conveyance. Occidental submits further that, because it did not own or control the property at the time of Jenkins's injury, it had no ability to warn of or remedy the dangerous condition and, under premises-liability principles, no duty to do so. Finally, Occidental contends that Jenkins cannot state an ordinary-negligence claim against it as the former owner because the improvement that caused the injury was made by Occidental to its own land for its own purpose. In other words, Occidental contends that it did not act as a design professional or a product manufacturer, nor did it otherwise breach any independent duty of care resulting in Jenkins's injury.

Jenkins responds that the court's dual-role analysis merely applies our decision in *Strakos v. Gehring,* which recognizes that the creator of a dangerous condition can remain liable for the condition even after relinquishing control of the property. 360 S.W.2d 787, 790 (Tex.1962). The dangerous condition in *Strakos,* however, was created by an independent contractor, who maintained that it no longer had responsibility for the dangerous condition because the owner had accepted its work. *Id.* at 788–89. The accepted-work doctrine provided at the time that a contractor owed no duty to the public for hazardous conditions the contractor created once the property owner accepted its work. *Id.* at 789. *Strakos* rejected the doctrine as theoretically unsound and held that contractors could be liable in negligence for creating the danger even after they relinquished control. *See id.* at 790 ("The fact that one who assumes control over a dangerous condition left by a contractor may be liable for injuries resulting therefrom does not necessarily mean that he who creates the danger should escape liability."). Jenkins submits that the situation here is analogous, arguing that Occidental's sale of the property and concomitant loss of control is no more an obstacle to Occidental's liability for creating the dangerous condition than the accepted-work doctrine proved to be in *Strakos.*

Jenkins also maintains that we should look to section 385 of the Second Restatement of Torts for guidance here, instead of section 352, because it also rejects the accepted-work doctrine. It provides:

§ 385. Persons Creating Artificial Conditions on Land on Behalf of Possessor:

Physical Harm Caused After Work has been Accepted

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

RESTATEMENT (SECOND) TORTS § 385 (1965); *see also Strakos*, 360 S.W.2d at 792 (quoting section 385 of the First Restatement of Torts). Under this provision, Jenkins argues, a former property owner (Occidental) who improves real property ("erects a structure or creates any other condition") is liable for resulting injuries as though it were a "manufacturer or independent contractor" making a chattel for others.

The court of appeals apparently agreed with Jenkins because it cites both *Strakos* and section 385 as support for its dual-role analysis. 415 S.W.3d at 30–31. But section 385 plainly concerns only the liability of independent contractors and other third parties who create dangerous conditions while making improvements "on behalf of" property owners; it does not purport to apply to property owners themselves. *See, e.g., Gresik v. PA Partners, L.P.*, 613 Pa. 303, 33 A.3d 594, 599 & nn. 6–7 (Pa. 2011) (noting that section 385 pertains to the liability of entities other than a possessor or vendor of land). *Strakos* also does not purport to separate a property owner's responsibility for dangerous property con-

ditions from the owner's control over the property. Like section 385, *Strakos* speaks only to the actions of third parties, and we have consistently limited its application accordingly. *See, e.g., In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (duty of contractor performing repairs); *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex.1997) (duty of former property manager); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (duty of adjacent tenant); *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986) (duty of fire marshal).

To be sure, an owner may have responsibility for a dangerous condition on its property whether created by the owner or others. But to conclude that the property owner owes the same duty of care as an independent contractor for the condition's creation is another matter because the respective duties of contractor and property owner are not the same.

 An owner who creates a dangerous condition on its own property has breached no duty of care unless and until the owner exposes certain people to the danger. The owner's duty in this instance is rooted in its control over the property, which is to say premises liability. Such liability rests on two theoretical assumptions: (1) the property owner controls the premises and is therefore responsible for dangerous conditions on it, *see Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex.2002), and (2) the property owner is in a superior position to know of and remedy the dangerous condition, *see Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex.2015).[3] Third parties, such as the

---

**3.** In *Austin*, we referenced a prior decision discussing the landowner's superior position to know of dangerous conditions and also referenced the "Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 51

cmt. t (2012) (addressing landowner's 'superior knowledge of the dangerous condition')." *Id.* Although not previously briefed, Jenkins asserted during oral argument that this reference to comment t to section 51 constituted

owner's contractors or servants, may share that duty while they control the property, but, as *Strakos* recognizes, the duty of these third parties is not necessarily co-extensive with that of the property owner because "the modern approach is to place contractors on the same footing as manufacturers of goods and apply the same general principles of negligence even after the acceptance of the work." *Strakos*, 360 S.W.2d at 792. The contractor's duties are thus tied not only to its control of the premises but also to the quality of its contracted work. This latter duty may be judged under ordinary-negligence principles even after the contractor no longer controls the premises. *Id.*

■ Similar legal implications have not developed with respect to land conveyances, where the deed has traditionally been viewed as the parties' full agreement, excluding all other terms and liabilities. RESTATEMENT (SECOND) OF TORTS § 352 cmt. a. In this area, "the ancient doctrine of caveat emptor" retains "much of its original force," requiring the vendee to make

his own inspection of the property and relieving the vendor of responsibility for existing defects. *Id.* Hence, the general rule is that "vendors of real property are not liable for injuries caused by dangerous conditions on real property after conveyance." *Roberts*, 886 S.W.2d at 367–68.

The court of appeals recognized this general rule. 415 S.W.3d at 31 (quoting *Roberts*, 886 S.W.2d at 367–68). But the court also recognized a new exception for certain former property owners [4] who, like Occidental, purportedly occupy dual roles as both owner and designer of the defective improvement.[5] The court concludes that in this latter role the property owner is similar to the independent contractor in *Strakos* and should have similar liability. *Id.* We, however, disagree.

■ No Texas case supports the court's dual-role analysis. Moreover, the weight of authority elsewhere rejects the notion that a property owner acts in multiple capacities when making an improvement to its property.[6] We similarly reject

our acceptance of the Third Restatement's unitary duty of care and an implicit abandonment of traditional premises-liability principles. The collateral reference, however, will not bear that weight. Its purpose was, as the parenthetical states, merely to highlight the law's assumption that the landowner possesses superior knowledge of premises defects.

4. The court indicated that the exception does not necessarily apply to "former home owners" who create "a dangerous condition through their design or construction work" but only to "an industrial plant owner who employed design professionals." 415 S.W.3d at 35 n. 27.

5. The court of appeals cited three cases from other jurisdictions it found factually analogous. 415 S.W.3d at 35 (citing *Stone v. United Eng'g, a Div. of Wean, Inc.*, 197 W.Va. 347, 475 S.E.2d 439, 443–44 (1996) (holding former plant owner liable for its negligent design of conveyor belt); *Dorman v. Swift & Co.*, 162 Ariz. 228, 782 P.2d 704, 706–08 (1989) (hold-

ing former plant owner liable for negligent design of conveyor belt); and *Carroll v. Dairy Farmers of Am., Inc.*, No. 2–04–24, 2005 WL 405719, at *6 (Ohio Ct.App. Feb. 22, 2005) (not designated for publication) (finding fact issue as to whether former plant owner was negligent in its design, fabrication, and installation of support platform)). Of the three, only *Dorman* actually shares the court of appeals' legal analysis, and that court observed that its analysis was unique. *See Dorman*, 782 P.2d at 708 n. 3 (recognizing "that no court has explained the applicability of § 352 [of the Second Restatement of Torts] as we do here").

6. *See, e.g., Gresik*, 33 A.3d at 599 & nn.6–7 (declining to impose liability on a former steel mill owner for a deadly explosion that occurred six years after the mill's sale and that resulted from the former owner's improvements); *Conley v. Stollings*, 223 W.Va. 762, 679 S.E.2d 594, 597–600 (2009) (holding former owners owed no duty to all-terrain vehi-

the notion that a property owner acts as both owner and independent contractor when improving its own property, subjecting itself to either premises-liability or ordinary-negligence principles depending on the injured party's pleadings. We hold instead that premises-liability principles apply to a property owner who creates a dangerous condition on its property, and that the claim of a person injured by the condition remains a premises-liability claim as to the owner-creator, regardless of how the injured party chooses to plead it. *See, e.g., E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 57 (Tex.App.–Houston [14th Dist.] 2014, pet. dism'd) ("Artful phrasing of the pleadings to encompass alleged design defects or any other theory of negligence does not affect the application of premises liability law."); *accord Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163–64 (Tex.App.–Dallas 2011, no pet.); *Hughston*, 797 S.W.2d at 291. And, if an injury should

occur after the condition's creator has conveyed the property, the premises-liability claim will, as a general rule, lie against the property's new owner, who ordinarily assumes responsibility for the property's condition with the conveyance.[7]

The record here establishes that Occidental sold land and eight years later a condition on the property (the acid-addition system) injured Jenkins. Occidental retained no control over the Bayport plant after the sale, much less the acid-addition system or the plant's employees. Without ownership, possession, or control of the plant, Occidental could not assess the continued safety of the acid-addition system or cure any deficiencies. Nor could it train or supervise the people working with the system or provide safeguards or warnings to them. Occidental simply had no means to protect Jenkins or prevent his injury. Under these circumstances, Occidental owed Jenkins no duty of care re-

cle driver who was killed after running into an unmarked steel cable installed by former owners because they sold the property "almost two months before the accident occurred"); *Papp v. Rocky Mountain Oil & Minerals, Inc.*, 236 Mont. 330, 769 P.2d 1249, 1256–57 (1989) (holding former owners who rebuilt an oil separator facility were not liable for the death of the buyer's employee from an accidental gas release after they sold the facility and released control); *Preston v. Goldman*, 42 Cal.3d 108, 227 Cal.Rptr. 817, 720 P.2d 476, 481 (1986) (rejecting plaintiff's assertion that the former owners' liability should be evaluated based on "their roles as designers and builders" and not upon their "status as landowners"); *Century Display Mfg. Corp. v. D.R. Wager Constr. Co.*, 71 Ill.2d 428, 17 Ill. Dec. 664, 376 N.E.2d 993, 996–98 (1978) (holding former owner of manufacturing plant was not liable for fire when new plant owner had inspected the property before purchase and had a "reasonable opportunity to discover the dangerous condition complained of [i.e., tanks and pipes containing flammable material] and to take the necessary precautionary measures to protect against it"); *Carl-*

*son v. Hampl*, 284 Minn. 85, 169 N.W.2d 56, 57 (1969) (holding former owner was not liable for negligent construction of stairway because he was no longer in control of the property at the time of the injury and "[t]he general rule is that a prior owner of real estate is not liable for injury to a purchaser or a third person caused by the condition of the premises existing at the time the purchaser took possession").

7. Exceptions to the general rule of no liability may apply when, for example, a vendor actively conceals or fails to disclose a dangerous condition of which it is aware. RESTATEMENT (SECOND) OF TORTS § 353; *see also Roberts*, 886 S.W.2d at 368 (recognizing these exceptions). While we agree that these exceptions exist, they are not implicated here. Jenkins does not claim that Occidental withheld or concealed any information about the acid-addition system. Moreover, the evidence establishes that Occidental handed over all plant records to Equistar with the sale in 1998, and that, at the time of the transfer, Occidental had used the acid-addition system for six years without incident.

garding the property's condition as that duty had passed to its vendee, Equistar, eight years before Jenkins's injury. The court of appeals accordingly erred in holding Occidental liable for the dangerous condition and Jenkins's injury.

### III

The court of appeals also held that Occidental's circumstances did not qualify it for protection under either the ten-year statute of repose applicable to registered or licensed professionals who design, plan, or inspect improvements to real property, TEX. CIV. PRAC. & REM. CODE § 16.008,[8] or the ten-year statute applicable to persons who construct or repair such improvements, *id.* § 16.009.[9] Occidental argues that the court has misapplied these statutes, and several amici join in that complaint.[10] Because we have concluded that Occidental breached no duty of care to Jenkins, however, the statutes of repose are irrelevant to our decision. We therefore do not decide whether the court of appeals correctly applied either statute in this case.

\* \* \*

The judgment of the court of appeals is reversed and judgment is rendered that Jenkins take nothing.

---

8. Section 16.008 provides that a suit "against a registered or licensed architect, engineer, interior designer, or landscape architect in this state, who designs, plans, or inspects the construction of an improvement to real property or equipment attached to real property," may not be brought more than ten years after substantial completion of the improvement or the beginning of operation of the equipment.

9. Section 16.009 provides that a suit "against a person who constructs or repairs an improvement to real property" may not be

10. The amici include the American Chemistry Counsel & Chamber of Commerce of the USA, the National Association of Manufacturers, the Texas Chemical Council, and the Texas Civil Justice League. The Pacific Legal Foundation has also filed an amicus brief in support of Occidental but confines its argument to the common law.