**DISSENT and Opinion Filed January 24, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01171-CV

### IN RE EAGLERIDGE OPERATING, LLC

**Original Proceeding from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-05402**

## DISSENTING OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Dissenting Opinion by Justice Whitehill

An independent contractor that creates an unreasonably dangerous property condition continues to have ordinary negligence liability for injuries that condition causes after the contractor finishes its work and leaves the premises. While working under a third party contract, Aruba (allegedly) created an unreasonably dangerous property condition that caused or contributed to Lovern's injuries after Aruba finished its work and left the property. Does Aruba have continuing ordinary negligence liability to plaintiffs?

The majority opinion says "no," because Aruba also owned a fractional portion of the working interest and therefore the case is governed *exclusively* by premises liability rules, which in the usual case provide that the owner's liability ends when it sells its interest and exits control of the property. The majority opinion's logic is flawed because it ignores the fact a person can

simultaneously act in two different legal capacities that produce distinct legal rights and responsibilities.

I would agree with the majority opinion that *Occidental Chemical Corp. v. Jenkins*, 478 S.W.3d 640 (Tex. 2016) controls the case if the evidence conclusively established that Aruba built and maintained this equipment in its capacity as co-owner. *Occidental* holds that an owner's potential liability for creating a dangerous property condition is governed by premises liability principles when in fact the owner does the work itself, that is, without hiring an actual independent contractor to do the work for the owner. *Id.* at 648. But the majority opinion does not acknowledge that the facts here are different from the *Occidental* facts.

Here, there is more than a scintilla of evidence that USG hired and paid Aruba as an actual independent contractor to do the work at issue in this case. That is, there is more than a scintilla of evidence that Aruba performed the work at issue in its factual and legal capacity as an independent contractor with a third party. If the jury were to find that to be so, then under *Strakos v. Gehring*, 360 S.W.2d 787 (Tex. 1962) Aruba's potential liability for mal-performing that work would exist under ordinary negligence principles. *Id.* at 790–91. Specifically, under *Strakos*, (i) Aruba's ordinary negligence liability for shoddy work that causes or contributes to an injury would continue even after Aruba finished its work and left the property and (ii) Eagleridge properly designated Aruba as a responsible third party. *See id.*

Because there is more than a scintilla of evidence in the mandamus record that Aruba created the injury causing unreasonably dangerous condition in its legal capacity as an actual independent contractor for USG (instead of deciding on its own to do the work itself), the trial court was legally required to honor Eagleridge's responsible third party designation and deny plaintiffs' motion to strike that designation. But the trial court didn't do that. Accordingly, the trial court abused its discretion; Eagleridge lacks an adequate legal remedy; and Eagleridge is

entitled to its requested mandamus relief. *See In re Molina*, 575 S.W.3d 76, 79 (Tex. App.—Dallas 2019, orig. proceeding) (abuse of discretion to strike responsible third party designation where there was more than a scintilla of evidence supporting that designation).

## I. FACTS

For present purposes, the mandamus record contains more than a scintilla of evidence supporting these controlling facts:

1. This is a personal injury case related to a natural gas pipeline explosion at a well-site.

2. At all relevant times, USG was the sole or majority working interest owner for the well at issue.

3. During all but a few months at the end of that time, Aruba was also a fractional working interest owner in the property.

4. Aruba was at all relevant times before April 2017 responsible for installing and maintaining the equipment at issue.

5. There is some evidence that USG hired and paid Aruba as an independent contractor to do installation and maintenance work that in some way caused or contributed to causing the harm for which plaintiffs seek damages.

6. Aruba sold its fractional working interest before August 2017.

7. The injury causing event happened in August 2017.

8. Plaintiffs' live pleading alleges that in its capacity as a contract operator Aruba was a major actor responsible for causing plaintiffs' injuries.

## II. ANALYSIS

### A. Standard of Review and Designated Responsible Third Parties

To obtain mandamus relief, a relator must show that the trial court clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *In re Molina*, 575 S.W.3d at 79.

In that regard, it is established that trial courts have no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled. *In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135; *Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding).

Because the erroneous denial of a motion for leave to designate a responsible third party skews the proceedings, potentially affects the litigation's outcome, and compromises the defense in ways unlikely to be apparent in the appellate record, such an error ordinarily renders the appellate remedy inadequate. *In re Coppola*, 535 S.W.3d 506, 509–10 (Tex. 2017) (orig. proceeding) (per curiam). The same problems arise when a trial court erroneously grants a motion to strike a responsible third party designation. Thus, the appellate remedy is also ordinarily inadequate when a trial court commits such an error.

Texas law allows a tort defendant to designate a person as a "responsible third party." TEX. CIV. PRAC. & REM. CODE § 33.004(a). The designation's purpose is to have the responsible third party submitted to the trier of fact as a possible cause of the claimant's harm. *See id*. § 33.003. This may reduce the percentage of responsibility attributed to the defendant, thus ultimately reducing its liability to the claimant. *See id*. § 33.013; *Flack v. Hanke*, 334 S.W.3d 251, 262 (Tex. App.—San Antonio 2010, pet. denied) ("[T]he defendant typically would be the party seeking to retain the RTP in the jury charge to diminish his potential liability and perhaps eliminate any joint and several liability.").

Once a responsible third party has been designated, and after an adequate time for discovery has passed, a party may move to strike the designation "on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage." CIV. PRAC. & REM. CODE § 33.004(*l*). "The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage." *Id*. Thus, the question for the trial court is whether the defendant produced sufficient evidence, more than a scintilla, for a reasonable jury to find the responsible third party responsible for a portion of the claimant's injury or damages. *In re Transit Mix Concrete & Materials Co*., No. 12-13-00364-CV, 2014 WL 1922724, at *3 (Tex. App.—Tyler May 14, 2014, orig. proceeding) (mem. op.).

The trial court's ruling on a motion to strike presents a legal question. *Ham v. Equity Residential Prop. Mgmt. Servs., Corp*., 315 S.W.3d 627, 631 (Tex. App.—Dallas 2010, pet. denied). Thus, our review, even under the abuse of discretion mandamus standard, is de novo. *See In re Labatt Food Serv., L.P*., 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) ("Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo.").

## B. Discussion

### 1. *Strakos* and *Occidental*

The trial court misapplied the law to the facts because it ignored the fact that Aruba's potential liability for the dangerous property condition, and thus its role as a designated responsible third party, arises from Aruba's activity in its capacity as an actual independent contractor—not from its capacity as a partial property owner who performs self-help work on the property. That result occurs because (i) the nature of the duties that a person owes depends on the capacity in which that person acted when he created the dangerous condition; (ii) a person can have two

distinct capacities when he creates an unreasonably dangerous property condition; and (iii) those distinct capacities are not mutually exclusive.

If the person was an (actual) independent contractor, under *Strakos* he owes independent contractor duties and has independent contractor general negligence exposure to third parties for injuries caused by his negligence in creating the unreasonably dangerous property condition— even after his legal relationship to the property ends.

But, if he acted for himself in his capacity as a property owner when he created the unreasonably dangerous condition, under *Occidental* his premises liability exposure ends when he sells his interest in the property. Under *Occidental*, that result applies even if the owner's work was something that the owner might have hired an independent contractor to do. *See Occidental*, 478 S.W.3d at 647–49.

Significantly, *Strakos* holds that there can be concurrent negligence cases involving an injury caused by a dangerous property condition when two different people are responsible for that dangerous condition. 360 S.W.2d at 794. Although that holding concerned two separate contractors performing separate tasks involving the dangerous condition, property owners and contractors can also be concurrently liable. That being so, a person can have concurrent negligence liability for a dangerous property condition when that person acts as both (i) a partial owner with premises liability duties and (ii) an actual independent contractor under contract with the a third party.

*Occidental* did not address the fact scenario this case presents. Instead, Occidental's conduct at issue in that case was solely as the property owner—not as an actual independent contractor.

The facts before us show that Aruba occupied both roles. First, it was a fractional working interest owner, and *Occidental*'s property owner based premises liability rules apply to it in that

capacity. Thus, Aruba post-sale has no continuing owner-based premises liability exposure for the equipment that caused the explosion. That result follows because as a non-owner Aruba had no ability to fix or warn against the problem. *See Occidental*, 478 S.W.3d at 648–49.

But, second, *Strakos*'s independent contractor rules apply to Aruba's capacity as USG's actual independent contractor. *Occidental* does not address an independent contractor's continuing liability exposure, but *Strakos* does. Thus, Aruba post-sale has continuing general negligence liability exposure.

To the extent the supreme court rejected Jenkins's "dual capacity" argument, it did so because Occidental acted in only one capacity, not because the same result would have applied had Occidental performed its liability causing activity in a different capacity as an independent contractor for someone else. *See id*. at 647–48.

In so doing, the supreme court analyzed *Strakos* at length. It then held that independent contractors' liability for creating unreasonably dangerous property conditions differs from property owners' liability for the same conduct because an independent contractor's duties exist due not only to its control of the premises but also to its work quality, which can be judged under ordinary negligence principles after the contractor no longer controls the premises:

> [A]s *Strakos* recognizes, the duty of [independent contractors] is not necessarily co-extensive with that of the property owner because "the modern approach is to place contractors on the same footing as manufacturers of goods and apply the same general principles of negligence even after the acceptance of the work." *Strakos*, 360 S.W.2d at 792. The contractor's duties are thus tied not only to its control of the premises but also to the quality of its contracted work. This latter duty may be judged under ordinary-negligence principles even after the contractor no longer controls the premises. *Id*.

*Id*. at 647.

Applying *Occidental*, *Strakos*, and their reasoning to the present case compels the conclusion that the critical fact distinguishing the present case from *Occidental* is that Aruba's tort

duties and corresponding post-sale liabilities arise from the quality of its work on the premises as a legally distinct, actual independent contractor.

### 2. *Arredondo*

Our San Antonio sister court in a case similar to *Strakos* recently discussed the different causes of action that can arise when a person creates an unreasonably dangerous condition on real property. *See Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383 (Tex. App.—San Antonio 2018, pet. pending). In that case, a utility's two contractors were involved in removing a utility pole on the owner's property. One was the removal contractor who did the removal work. The other was the technical, supervising contractor that did not do the actual removal.

The owner stepped in the hole and suffered personal injuries. She then sued the utility and the two contractors.

An issue concerned whether the plaintiffs' claims against the removal contractor were ordinary negligence or premises liability claims. The San Antonio court discussed *Strakos*, *Occidental*, and the *Restatement (Second) of Torts* § 385 at length. The court then held that the claims against the removal contractor were ordinary negligence claims, instead of premises liability claims. In so doing, the court further held that: (i) "liability for a premises condition may arise not only from ownership or control of the property, but also from one's role in creating the dangerous condition in the first instance" and (ii) "an actor such as an independent contractor or servant acting on behalf of a property owner or possessor may be held liable under ordinary negligence for creating a dangerous premises condition even after he is no longer in control of the property." *Id*. (citing *Occidental*, 478 S.W.3d at 645, 646–47).

### 3.  Application

At this stage, Eagleridge was not required to prevail in its case that Aruba acted negligently or what percentage of responsibility should be assigned to Aruba.  Rather, to sustain its responsible party designation for Aruba, Eagleridge needed to adduce only more than a scintilla of evidence that Aruba engaged in ordinary negligence that caused or contributed to Lovern's injury.

Based on the mandamus record before us, Eagleridge adduced more than a scintilla of evidence establishing grounds for ordinary negligence claims against Aruba based on Aruba's independent contractor activities that caused the plaintiffs' injuries in suit.  Indeed, plaintiffs' fourth amended petition and Eagleridge's expert report assert facts that do just that.  Furthermore, there is evidence that Aruba did installation and maintenance work that the plaintiffs allege was a cause of the explosion that caused their injuries.  Additionally, there is deposition testimony stating that USG hired Aruba under contract to do that work.

Plaintiffs (and the majority opinion) never contend otherwise.  They instead rely on their misreading of *Occidental*.  Thus, there is more than a scintilla of evidence that Aruba acted negligently and that such ordinary negligence was a proximate cause of Lovern's injuries.  That's enough to defeat plaintiffs' motion to strike.  *See* CIV. PRAC. & REM. CODE § 33.004(*l*).

Because Texas law provides that a party like Aruba acting in its legal capacity as an actual independent contractor can be liable in ordinary negligence for creating an unreasonably dangerous condition while in control of the subject property, even after it loses control over the property, the trial court erred as a matter of law in concluding otherwise.  It matters not that Aruba also had a separate legal capacity as a fractional working interest owner in the project.  Texas law generally respects separate legal capacities.

Furthermore, improperly striking a responsible party designation is grounds for mandamus relief.  *In re Molina*, 575 S.W.3d at 79.  Accordingly, we should conditionally grant Eagleridge's mandamus petition.

/Bill Whitehill//
BILL WHITEHILL
JUSTICE

191171df.p05