**Opinion filed January 26, 2023**



## In The

# Elebenth Court of Appeals

_____

## No. 11-21-00125-CV

_____

### JOSE TOVALIN, Appellant

### V.

### TEXAS GENERATOR POWER SYSTEMS & SERVICES, INC., Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-18-11-1709-CV**

### M E M O R A N D U M   O P I N I O N

This appeal arises from a suit to recover damages for personal injuries sustained by Appellant, Jose Tovalin, following an on-the-job incident. Appellant originally filed suit against Texas Generator Power Systems & Services, Inc. (Texas Generator); Parsley Energy, Inc.; Parsley Energy, LLC; Parsley Energy, L.P.; Parsley Energy Operations, LLC; Parsley Energy Operations II, LLC; and Parsley

Veritas Energy Partners, LLC. In his first amended petition, Appellant abandoned his claims against all defendants, except for Texas Generator and Parsley Energy Operations, LLC. Appellant and Parsley Energy Operations, LLC eventually settled, and Parsley was dismissed from the suit. Later, Texas Generator filed a combined traditional and no-evidence motion for summary judgment; Appellant filed a response. After a hearing, the trial court granted summary judgment in favor of Texas Generator.

In two issues, Appellant contends on appeal that: (1) the trial court erred when it granted Texas Generator's motion for summary judgment because issues of material fact exist; and (2) the trial court erred when it sustained Texas Generator's objections to Appellant's summary judgment evidence. We affirm.

## I. *Factual and Procedural Background*

On November 23, 2016, Appellant was injured while working at a Parsley Energy well site in Reagan County. Pacesetter Drilling, LLC, Appellant's employer, was retained to move a drilling rig from the well site. At some point, Appellant was given the "all clear" signal from the driller on the rig, indicating that the power to the rig had been turned off. Appellant was subsequently electrocuted as he attempted to tie off an electrical line—a component of the Pacesetter rig equipment.

The same day that Appellant was injured, Texas Generator received a call from Johnny Clark, a Pacesetter employee, requesting Texas Generator's assistance with the rig move—specifically, to extend the electrical cable for the top "doghouse" and to splice some wires. While still en route to the well site, Texas Generator received a second call from Clark, asking when the technician from Texas Generator would arrive because someone had been electrocuted during the rig move. After the Texas Generator technician arrived at the well site, and in addition to completing the work initially requested by Clark, the technician found and repaired a "bad spot" in

2

the wire that was connected to the number one brake cooling pump. The next day, at the request of Pacesetter, Texas Generator completed a "walk-through" and inspection of the rig's electrical components. In doing so, the Texas Generator technician observed that a breaker door handle was in the "off" position, but the breaker was in the "on" position. The technician then traced the circuit from the breaker to the receptacle panel, but nothing was plugged into the receptacle.

The desired theory of recovery to be pursued by Appellant is unclear. In his second amended petition, Appellant first alleges that Texas Generator's negligence was the proximate cause of his injuries. Next, Appellant alleges that Texas Generator knew or should have known that the poor condition of the cables and power box posed a danger to the workers on the well site, and that Texas Generator failed to remedy or maintain this equipment. Texas Generator later filed a combined traditional and no-evidence motion for summary judgment. Appellant filed a response, and Texas Generator asserted four objections to Appellant's summary judgment evidence. The trial court held a hearing on Texas Generator's motions on April 8, 2021. After the hearing, the trial court sustained two of the evidentiary objections and granted summary judgment in favor of Texas Generator. This appeal followed.

## II. *Standard of Review—Summary Judgment*

We review a trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which the judgment is sought are meritorious." *Id.*

To prevail under the traditional summary judgment standard, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein &*

*Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

In reviewing either a traditional or a no-evidence motion for summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007).

When a party moves for summary judgment on both no-evidence and traditional grounds, we address the no-evidence grounds first. *See Merriman*, 407 S.W.3d at 248 ("[I]f the nonmovant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."). The nonmovant has the burden to produce at least a scintilla of evidence raising a genuine issue of material fact as to each challenged element of its cause of action. TEX. R. CIV. P. 166a(i); *Merriam*, 407 S.W.3d at 248 (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206 (Tex. 2002)). The evidence is "more than a scintilla" if it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004).

## III. *Analysis*

On appeal, Appellant claims that the trial court erred when it granted Texas Generator's combined motion for summary judgment. Appellant challenges the summary judgment on both no-evidence and traditional grounds. Because the trial court did not specify the grounds on which it granted these motions, we address the no-evidence ground first. *See Merriman*, 407 S.W.3d at 248. In its motion for summary judgment, Texas Generator asserted that Appellant could produce no evidence as to the elements that are required to establish a negligence cause of action, namely, whether (1) Texas Generator owed a legal duty to Appellant; (2) Texas Generator breached that duty; and (3) the breach proximately caused Appellant's injuries. The burden then shifted to Appellant to produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *See KMS Retail*, 593 S.W.3d at 181; *King Ranch*, 118 S.W.3d at 751.

When ordinary negligence is alleged, the threshold inquiry is whether the defendant owes a legal duty to the plaintiff. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). The absence of a recognized legal duty ends the inquiry as to whether negligence liability exists. *McNeil v. Nabors Drilling USA, Inc.*, 36 S.W.3d 248, 250 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998)). However, in a premises liability context, which is a separate and distinct theory of liability, the "duty to make the premises safe or warn of dangerous conditions 'generally runs with the ownership or control of the property,' and a defendant's liability under [this] theory rests on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)).

Appellant alleges in his operative pleading, and contends on appeal, that Texas Generator owed him a legal duty because Texas Generator had a right to *control* the electrical equipment that allegedly malfunctioned and caused his injuries. Although inartful, the theory of liability that Appellant has alleged against Texas Generator appears to be more akin to a premises liability cause of action rather than one sounding in ordinary negligence. These theories of liability have common elements—such as whether a legal duty exists—but the element of *control* is not one of them. The defendant's *control* over the instrumentality that caused the plaintiff's injuries is unique to a premises liability theory and must be established in order to subject the defendant to a premises liability finding. Nevertheless, under either theory or scenario, Appellant's claim against Texas Generator fails.

Importantly, the evidence that Appellant submitted with his response to Texas Generator's combined motion for summary judgment does not support his assertion, irrespective of the liability theory upon which he relies. Appellant's summary judgment evidence shows that he testified it was Pacesetter, not Texas Generator, who owned and controlled the electrical equipment that caused his injuries. According to Appellant's testimony, Pacesetter's "tool pushers" are responsible for inspecting and maintaining Pacesetter's electrical lines and other rig equipment. Upon detecting a problem, the tool pusher then is responsible for contacting and retaining someone to repair any deficiency. Appellant believed that other Pacesetter employees knew of the dangerous condition of the electrical cables—and failed to warn him of such conditions—but Appellant admitted he had no knowledge of whether Texas Generator was aware of the dangerous conditions that caused his injuries.

Despite Appellant's assertion that Texas Generator should have known that the electrical equipment on the rig was deficient and potentially dangerous, the

evidence in the record shows that only Pacesetter may have known about the existence of these conditions. In this instance, Texas Generator's only involvement with the rig was Pacesetter's request that Texas Generator provide necessary service and repairs to the rig, which, significantly, did not occur until *after* Appellant was electrocuted. Appellant testified that he had been told Texas Generator was the company that Pacesetter used for electrical services, but he also acknowledged that no Texas Generator employee was present at the time he was injured and that he had never seen a Texas Generator employee work on the rig. Appellant further admitted that he did not know which electrical company had installed the power cables for the rig that he was working on when he was injured.

Finally, Appellant claims that Chad Morris, a Texas Generator employee, testified that Texas Generator exercised control over the equipment that caused his injuries. Appellant misconstrues the evidence. According to Appellant, Morris testified that Texas Generator "not only serviced the equipment in question for Pacesetter, but [also] sold it to them." However, the record does not support this assertion. Instead, Morris testified that (1) Pacesetter owned the equipment, (2) he did not know who sold the equipment to Pacesetter, and (3) he did not know whether Texas Generator had ever serviced the equipment. Even if we assumed, as Appellant suggests, that Texas Generator did service the equipment, this would only establish that Texas Generator had responded to the individual service requests that it received from Pacesetter. This does not contradict Appellant's testimony that only Pacesetter owned and maintained their electrical equipment—even if such maintenance required periodic service requests from an independent company. Simply responding to service calls does not support Appellant's assertion that Texas Generator owned or controlled the equipment, nor does it establish that it owed a legal duty to Appellant in this case.

7

Considering the evidence in the record before us, we conclude that Appellant failed to provide even a scintilla of evidence to defeat the elements of Appellant's cause of action that Texas Generator challenged in its no-evidence motion for summary judgment. Without the existence of a legal duty, Appellant's claim against Texas Generator, irrespective of the theory alleged, fails. *See McNeil*, 36 S.W.3d at 250. Accordingly, the trial court did not err when it granted Texas Generator's no-evidence motion for summary judgment.

Although we may end our analysis here, because the trial court did not specify the grounds on which it granted summary judgment in favor of Texas Generator, we will also evaluate the merits of Texas Generator's traditional grounds for summary judgment. To prevail under the traditional summary judgment standard, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Texas Generator argued in its traditional motion, among other things, that it owed no legal duty to Appellant in connection with the incident that caused his injuries. In support of its motion, Texas Generator submitted summary judgment evidence that it (1) was not involved in or present during the rig move when Appellant was injured, (2) did not own or control Pacesetter's electrical equipment, (3) was not responsible for inspecting or maintaining such equipment without a specific request from Pacesetter, and (4) had no knowledge of any defects or dangerous conditions on the rig at the time Appellant was injured. This, and the evidence outlined above, is uncontroverted.

Because the record shows that Texas Generator owed no legal duty to Appellant in connection with this incident and his injuries, we conclude that the trial court did not err when it granted Texas Generator's traditional motion for summary judgment. Accordingly, we overrule Appellant's first issue.

Appellant's second issue concerns the trial court's rulings on two of Texas Generator's objections to Appellant's summary judgment evidence. In reviewing the trial court's grant of Texas Generator's no-evidence and traditional motions for summary judgment, we have also considered the same summary judgment evidence that Appellant claims the trial court erroneously excluded.[1] Because we have concluded that Texas Generator was entitled to summary judgment based on the summary judgment evidence in the record, including *all* of the summary judgment evidence submitted by Appellant, we need not reach Appellant's second issue. *See* TEX. R. APP. P. 47.1.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


January 26, 2023

Panel consists of: Bailey, C.J.,
and Trotter, J.

Williams, J., not participating.

---

[1]In addition, Appellant failed to address on appeal the grounds on which the trial court sustained Texas Generator's objections. Instead, Appellant argues that the evidence to which Texas Generator objected was submitted and considered by the trial court elsewhere and, as such, should not have been excluded in this instance. Further, Appellant does not contend that he was harmed by the trial court's rulings to sustain Texas Generator's objections to his summary judgment evidence. Because Appellant does not challenge the trial court's reasoning for its rulings and because he has failed to articulate any harm that he purportedly sustained as a result of the trial court's rulings, we need not address his second issue. *See* TEX. R. APP. P. 47.1.