# IN THE SUPREME COURT OF TEXAS

No. 19-0045

AEP Texas Central Company and
T&D Solutions, LLC, Petitioners,

v.

Marta Arredondo, Respondent

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued September 16, 2020**

Justice Lehrmann delivered the opinion of the Court.

The issues presented in this personal-injury case include whether an electric utility owed a duty to ensure the safe performance of its independent contractor's work and whether genuine issues of material fact exist with respect to the contractor's own negligence. The court of appeals answered yes to both questions, resulting in a partial reversal of the trial court's summary judgments in favor of the utility and the contractor. We hold that the utility did not retain control over the pertinent details of the contractor's work and thus owed no duty that would otherwise flow from such control. However, we agree with the court of appeals that fact issues preclude summary judgment for the contractor. Accordingly, we affirm the court of appeals' judgment in part and reverse it in part.

## I. Background

AEP Texas Central Company is an electric utility. On July 1, 2012, AEP entered into a two-year contract with T&D Solutions, LLC, pursuant to which T&D was to supply to AEP on an as-needed basis "all supervision, labor, equipment and specified materials necessary to perform underground distribution line construction and/or maintenance services," "underground distribution line construction and/or maintenance bid projects," and "storm restoration services."[1] The contract designated T&D an "independent contractor[] . . . solely responsible for the supervision, direction, and control of its employees and Subcontractors." AEP contracted with another company, TechServ Consulting and Training Ltd., to inspect the work of AEP's contractors, including T&D.

Pursuant to the T&D contract, AEP issued a work order that included a directive to T&D to remove a stub pole—a utility pole from which electric wires have been removed and the top portion cut off—located in a municipal right-of-way on the edge of Marta Arredondo's property in Falfurrias, Texas. Removal of a stub pole involves "[p]ulling it out of the ground and returning it back to the yard, [and] filling the hole up with dirt." T&D removed the pole and certified the job as complete on December 2, 2013. TechServ in turn certified the job as complete on December 9, 2013.

On July 30, 2014, Arredondo was injured while mowing her lawn when she stepped into a hole approximately two-and-a-half feet deep in the area where the pole had been removed. According to Arredondo, the grass in that area had grown tall because the pole had been left on

---

[1] The "Contract Letter" the parties signed incorporated several additional documents that governed performance. References to the "contract" include all such documents.

the ground for some period of time before being hauled away. Arredondo "called the City" to report the issue, and an AEP employee was dispatched to the property to fill the hole.

Arredondo sued AEP, T&D, and TechServ for negligence, negligence per se, and gross negligence. Arredondo alleged that the defendants "had a utility easement" on her property and "created a defect in the easement property when they removed the pole and failed to fill the hole or otherwise warn of its existence." The defendants each moved for no-evidence and traditional summary judgment, and the trial court granted all three motions. Arredondo appealed.

The court of appeals affirmed the summary judgment as to all claims against TechServ and as to the negligence per se and gross negligence claims against T&D. 567 S.W.3d 383, 388 (Tex. App.—San Antonio 2018). Arredondo did not file a petition for review, and those portions of the court of appeals' judgment are thus final. TEX. R. APP. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."). The court of appeals reversed the trial court's summary judgment as to the negligence claim against T&D and as to all claims against AEP, remanding the case to the trial court for further proceedings on those claims. 567 S.W.3d at 388. AEP and T&D filed petitions for review, which we granted. We address each petition in turn.

## II. Contractor T&D's Petition

In holding that summary judgment was improper on Arredondo's negligence claim against T&D, the court of appeals first held that the claim sounds in ordinary negligence rather than premises liability. *Id.* at 393; *see Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) ("Although premises liability is itself a branch of negligence law, it is a 'special form' with different elements that define a property owner or occupant's duty with respect to

3

those who enter the property."). The court further held that T&D owed Arredondo a duty to either warn of or make safe the hole it created by removing the utility pole. 567 S.W.3d at 394. Finally, the court did not address T&D's argument that Arredondo failed to raise a fact issue as to whether T&D breached that duty, holding T&D waived the issue by raising it for the first time in reply to Arredondo's summary-judgment response. *Id.* at 394 n.5.

In its petition for review in this Court, T&D takes no issue with the court of appeals' holdings regarding the nature and scope of the duty T&D owed Arredondo. We thus express no opinion on that portion of the court of appeals' analysis. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 849 (Tex. 2018) ("A petition for review must state all issues or points presented for review, and issues not presented in the petition for review are waived." (citing TEX. R. APP. P. 53.2(f))). Instead, T&D focuses on the breach element of Arredondo's negligence claim. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) ("The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."). Specifically, T&D contends that (1) the summary-judgment evidence conclusively establishes that T&D "properly filled the hole with dirt after it extracted the stub pole on Arredondo's property" and thus that T&D did not breach any duty owed to Arredondo, and (2) T&D timely and properly raised that argument in its motion for summary judgment. As discussed below, we disagree with T&D's characterization of the evidence and hold that a fact issue exists as to whether T&D failed to properly fill the hole. Accordingly, even assuming that T&D properly raised the breach issue in the trial court, the court of appeals correctly reversed summary judgment as to the negligence claim against T&D.

4

To be entitled to summary judgment, T&D had the burden to prove that no genuine issue of material fact exists and that T&D is entitled to judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); TEX. R. CIV. P. 166a(c).[2] We review an order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

T&D relies on the deposition of Robert Ramos, the foreman of the T&D crew responsible for removing the stub pole on Arredondo's property. Ramos testified that when the crew removed the pole, the resulting hole was "filled in immediately" with dirt: "[W]hen I removed this pole, I filled [the hole] up with dirt and I tamped it, and I left it with like six inches of dirt . . . on [top of] that." He testified that this occurred before December 2, 2013, when he certified the job as completed. Arredondo was injured over seven months later. T&D argues that this evidence amounts to an "undisputed fact" that T&D filled the hole immediately after removing the stub pole and shows that "T&D safely completed its job in a workmanlike manner."

However, as the court of appeals correctly recognized, Arredondo presented evidence that the two-and-a-half-foot hole in which she fell on July 30, 2014 was in the same location where T&D had removed the stub pole and was the same size and diameter as a hole produced by the removal of a utility pole. 567 S.W.3d at 394. The existence, size, shape, and location of

---

[2] As noted, T&D also filed a no-evidence motion for summary judgment under Rule 166a(i), which allows a party to move for summary judgment, without presenting evidence, "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). In this Court, T&D focuses only on its traditional motion for summary judgment, arguing that the summary-judgment evidence conclusively establishes that it did not breach its duty. Thus, we do not address whether the trial court properly granted T&D's no-evidence motion.

the hole on the date of Arredondo's injury call into question whether T&D filled the hole created by removal of the stub pole, or at least whether T&D did so properly. Thus, the evidence of breach is conflicting, not conclusive. Because a genuine issue of material fact exists as to whether T&D failed to exercise reasonable care in removing the stub pole, T&D is not entitled to summary judgment on Arredondo's negligence claim.

### III. Utility AEP's Petition

Arredondo's claims against AEP are premised on its alleged liability in tort for harm caused by the acts or omissions of its independent contractor, T&D. AEP argued in its motion for summary judgment that, as a matter of law, it owed no duty to ensure that T&D performed its work in a safe manner. Arredondo responded that AEP owed her a duty in light of AEP's contractual right to control T&D and the inherently dangerous nature of the work T&D was contracted to perform.[3] The court of appeals held that AEP owed a duty arising from its "contractual right to control the aspect of T&D's work [removal of the utility pole] that allegedly caused Arredondo's injury." *Id.* at 399.

In this Court, AEP again argues that it owed no duty to Arredondo with respect to T&D's work because AEP did not retain control over the operative details of T&D's removal of the stub pole, including filling in the resulting hole. AEP also disputes Arredondo's alternative theory that AEP may be liable for its contractor's actions based on the "inherently dangerous" nature of the work performed. Arredondo maintains that AEP's right to control T&D's work and the

---

[3] Arredondo also argued that AEP owed her a duty as "the dominant easement holder of the property where th[e] incident occurred." However, in this Court Arredondo no longer contends that AEP's alleged status as an easement holder, which AEP disputes, provides an independent basis for a duty of care in the absence of either control over T&D's work or a nondelegable duty arising from the nature of the work T&D performed.

6

nature of that work gave rise to a duty of care. For the reasons discussed below, we agree with AEP that it owed no duty as a matter of law. *See Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005) ("The existence of a legal duty is a question of law for the court to decide . . . from the facts surrounding the occurrence in question." (citations and internal quotation marks omitted)).

## A. No Duty Based on Right to Control

As a general rule, one who employs an independent contractor has no duty to ensure that the contractor performs its work in a safe manner. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006). We have recognized an exception to this rule, however, when "the employer retains some control over the manner in which the contractor performs the work that causes the damage." *Id.* To that end, in *Redinger v. Living, Inc.*, we adopted section 414 of the Restatement (Second) of Torts, which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

689 S.W.2d 415, 418 (Tex. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1977)). If the right to control a contractor's work exists, a duty arises regardless of whether actual control is exercised. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) ("It is the [contractual] right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner." (citation and internal quotation marks omitted) (alteration in original)).

In evaluating whether a duty is owed under section 414, we have explained that an employer "must have some latitude to tell its independent contractors what to do, in general terms, . . . without becoming subject to liability." *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156

7

(Tex. 1999). Thus, the duty arises where the right to control extends to "the means, methods, or details of the independent contractor's work," *Bright*, 89 S.W.3d at 606, such that the contractor "is not entirely free to do the work in his own way," *Chapa*, 11 S.W.3d at 155 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c).[4] Further, the control "must relate to the condition or activity that caused the injury." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Applying those principles, we have held that no duty of care arose with respect to an independent contractor's work by virtue of the employer's general right to order work started and stopped, *Chapa*, 11 S.W.3d at 155, to direct when and where the work was done, *Fifth Club*, 196 S.W.3d at 791–92, to require that work be done by a certain time, *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004), or to control activities that had nothing to do with the resulting injury, *id.* at 294.

Here, Arredondo does not assert that AEP exercised actual control over T&D's removal of the stub pole. Rather, she argues that AEP's contract with T&D gave AEP the right to control that work, triggering a duty to use reasonable care in exercising such control. The court of appeals agreed, holding that two provisions in the contract conferred the requisite right to control:

- [T&D] shall have an authorized representative at the Site to whom [AEP] may give instructions at all times when Work is being performed.

---

[4] This duty requires the employer "to exercise any retained supervisory control 'with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.'" *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. a). AEP argues that the court of appeals erroneously implied that such a duty gives rise to strict vicarious liability for the negligent acts of an independent contractor regardless of the employer's own fault. *See* 567 S.W.3d at 400. AEP contends that, properly construed, section 414 subjects an employer to liability only for its *own* negligence in exercising retained control. Because we hold that no duty arose, we need not address AEP's arguments regarding the duty's scope.

- When Work is performed on private property, . . . [T&D] shall use its best efforts to arrange for the completion of Work to be with the least inconvenience practicable to [the owner]. Work performance on private property shall be done as expeditiously as possible and the premises restored immediately.

567 S.W.3d at 398–99 (ellipsis in original). The court concluded that, by virtue of these two provisions,[5] AEP "retained control over the method and means of T&D's work as it related to removing the utility pole on Arredondo's property." *Id.* at 399. We disagree.

As to the first provision, requiring the presence of a T&D authorized representative to whom AEP may give unspecified instructions says nothing about AEP's control over the specific means and methods of T&D's work. The Fourth Court of Appeals interpreted a similar provision in *Victoria Electric Co-op, Inc. v. Williams*, holding that it had "nothing to do with right of control" but rather clarified that giving instructions to the contractor's designated "superintendent" was equivalent to giving them directly to the contractor. 100 S.W.3d 323, 327 & n.3 (Tex. App.—San Antonio 2002, pet. denied).[6] We agree with that interpretation, which gives meaning to the provision without wholly supplanting the contract's designation of T&D as

_____

[5] Arredondo cited numerous additional contractual provisions that the court of appeals held "do not relate to the specific condition or activity from which her injuries arose." 567 S.W.3d at 399 & n.6. Arredondo disputes the court's conclusion as to three of those provisions. Two provisions, which relate to change orders, allow AEP to add to, delete from, or modify the scope of work by issuing such orders, and require T&D to comply with change orders even when T&D disputes the scope of work. Arredondo provides no explanation, and we discern none, as to how those provisions speak to the means and methods of T&D's work with respect to the removal of the stub pole. The third provision allows AEP to prohibit or restrict the use of certain specialty tooling. Arredondo contends that "removing stub poles actually requires T&D to use specialized equipment that AEP can contractually prohibit or restrict," but that assertion inaccurately characterizes the record. The "Specialty Tooling" that AEP may contractually prohibit is defined as "tooling fabricated, developed by or modified by [T&D]." A T&D employee testified that T&D uses a "digger derrick" to remove a utility pole and uses shovels to fill the resulting hole. There is no indication in the record that such equipment qualifies as "Specialty Tooling" over which AEP retained control or that the particular equipment used had anything to do with Arredondo's injury.

[6] The provision stated in pertinent part: "The Contractor shall cause the construction work on the Project to receive constant supervision by a competent superintendent . . . who shall be present at all times during working hours where construction is being carried on. . . . Directions and instructions given to the Superintendent by the Owner shall be binding upon the Contractor." *Victoria Elec.*, 100 S.W.3d at 327.

9

an independent contractor "solely responsible for the supervision, direction, and control of its employees and Subcontractors." *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) ("When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless."). At most, the provision is consistent with the recognition that AEP is T&D's "boss," which is insufficient to confer liability under section 414. *See Gonzalez v. Ramirez*, 463 S.W.3d 499, 507 (Tex. 2015) ("If the fact that the general contractor is the 'boss' of a subcontractor were enough to create liability, the requirement of control would be obsolete."). Because the provision sets forth no requirements as to "the means, methods, or details of [T&D's] work," it does not support the court of appeals' conclusion that AEP owed Arredondo a duty of care.

The second provision on which the court of appeals relied, which requires that work performed on private property "be done as expeditiously as possible and the premises restored immediately," fares no better. The court of appeals correctly noted that this provision "relates to the source of Arredondo's injuries: T&D's alleged failure to fill in the hole caused by its removal of a utility pole." 567 S.W.3d at 399. But the court said nothing about how the provision confers a right of control as to the means, methods, and details of that work, *id.*, and we see no such connection. The provision informs the scope of T&D's work when private property is involved and requires a particular result—restoration of the premises. But it provides no indication of how T&D should accomplish that result, such as by using a particular type of fill, equipment, or technique. *See Bright*, 89 S.W.3d at 607 (contract stating that its provisions "shall be deemed to mean that [contractor] shall follow the desires of [owner] in the results of the work

only" did not impose a duty of care on the owner). And as noted, a "general requirement that work be done by a certain time is insufficient to show right of control." *Khan*, 138 S.W.3d at 295; *see also Fifth Club*, 196 S.W.3d at 792.

In sum, we hold that AEP did not have the right to control the means, methods, or details of T&D's work with respect to removal of the stub pole or restoration of the property necessitated by the pole's removal. Accordingly, AEP did not owe a duty to Arredondo under section 414.[7]

### B. No Duty Based on Inherently Dangerous Activity

Arredondo alternatively argues that AEP owed her a "nondelegable duty" with respect to T&D's work by virtue of the "inherently dangerous" nature of that work. *See Fifth Club*, 196 S.W.3d at 795 (explaining that an employer can be held liable for an independent contractor's tortious acts "only if the employer maintains detailed control over the independent contractor's acts *or* if the work itself involves a nondelegable duty, whether inherently dangerous or statutorily prescribed") (emphasis added). Although the court of appeals did not reach this issue, the parties have raised and briefed it here, and we address it in the interest of judicial economy. *State v. Morello*, 547 S.W.3d 881, 888 (Tex. 2018).

An "inherently dangerous" activity in this context is one in which the danger "stems from the activity itself rather than the manner of performance." *Fifth Club*, 196 S.W.3d at 795. That is, such activities are "dangerous in their normal, nondefective state." *Cent. Ready Mix Concrete*

---

[7] AEP argues that, to the extent it could be held liable under a "retained control" theory, Arredondo's claim against it sounds in premises liability, not ordinary negligence. AEP further argues that Arredondo produced no evidence to support several elements of her premises-liability claim. Arredondo responds that her claim sounds in ordinary negligence and that, in any event, the evidence raises a genuine issue of material fact as to the elements of a premises-liability claim. Because we hold that AEP may not be held liable under a retained-control theory, we need not reach these issues.

11

*Co. v. Islas*, 228 S.W.3d 649, 653 (Tex. 2007); *see also Goolsby v. Kenney*, 545 S.W.2d 591, 594 (Tex. App.—Tyler 1976, writ ref'd n.r.e.) (inherently dangerous work "must result in probable injury to third persons or the public," meaning that no liability is imposed for an injury that "arises entirely from the wrongful act of the independent contractor"). The doctrine is thus exceedingly narrow. *See Cent. Ready Mix*, 228 S.W.3d at 652 (noting that "Texas courts have found very few activities so inherently dangerous as to impose a nondelegable duty").

AEP argues that there is nothing inherently dangerous about the removal of a stub pole and that Arredondo's injuries arose from T&D's allegedly negligent performance of the work, not the innate danger of the work itself. Arredondo responds that the contract between AEP and T&D contemplated the performance of "inherently dangerous" electrical work. We agree with AEP.

Assuming that some electrical work can qualify as inherently dangerous, the work that allegedly caused Arredondo's injury does not fall into that category. Rather, T&D's scope of work was to remove a stub pole—meaning all live electrical wires had already been removed— and restore the property. The danger to third persons or the public stems not from the nature of the work itself but from its improper performance. Accordingly, we hold that the work T&D performed did not constitute an inherently dangerous activity giving rise to a nondelegable duty of care by AEP.

### C. No Duty Based on Statute

Finally, by pleading a negligence per se claim, Arredondo impliedly asserted that AEP owed her a duty of care imposed by statute. *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979) ("Negligence per se is a tort concept whereby a legislatively

12

imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."). The court of appeals held that AEP did not challenge Arredondo's negligence per se claim in its summary-judgment motions and that the trial court therefore erred in granting AEP summary judgment on that claim. 567 S.W.3d at 400. We disagree.

As noted, AEP argued in its no-evidence motion that Arredondo produced no evidence that AEP "had any duty to [Arredondo]" or "breached any legal duty to [Arredondo]." *See* TEX. R. CIV. P. 166a(i) (a no-evidence motion for summary judgment "must state the elements as to which there is no evidence"). Thus, to the extent Arredondo wished to pursue a negligence claim premised on a duty imposed by statute, she bore the burden to respond to the motion with summary-judgment evidence raising a genuine issue of material fact on the existence and breach of such a duty. *See id.* In her response to AEP's motion, however, Arredondo cited no statute that allegedly imposed a duty on AEP. Nor did she do so in her brief in the court of appeals or in this Court. Accordingly, we see no basis on which to question the trial court's summary judgment on Arredondo's negligence per se claim.[8]

### D. Disposition of Claims

The existence of a duty of care is an element of Arredondo's negligence, negligence per se, and gross negligence claims. *See La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex. 1999) ("[W]hat separates ordinary negligence from gross negligence is the defendant's state of

---

[8] In response to T&D's summary-judgment motion, Arredondo argued that a federal statute requiring employers to furnish a safe workplace imposed a duty of care on T&D. *See* 29 U.S.C. § 654(a)(1). The court of appeals rejected that statute as a basis for a negligence per se claim against T&D, holding that the statute is designed to protect employees and that Arredondo thus "failed to present any evidence T&D violated a statute that was designed to prevent an injury to the class of persons to which Arredondo belongs." 567 S.W.3d at 395; *see El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) (explaining that a threshold question in determining whether to adopt a statute as a standard for negligence is whether "the statute is designed to prevent an injury to that class of persons to which the injured party belongs").

mind[.]”); *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998) (Gonzalez, J., concurring) (“[N]egligence and gross negligence are not separable causes of action but are inextricably intertwined.”).  AEP did not owe Arredondo a duty with respect to T&D’s work, and the trial court thus correctly granted summary judgment on all of Arredondo’s claims against AEP.

## IV. Conclusion

Because a genuine issue of material fact exists as to whether T&D breached a duty of care, the court of appeals correctly reversed summary judgment on Arredondo’s negligence claim against T&D.  We thus affirm the court of appeals’ judgment as to that claim.  However, because AEP owed no duty with respect to T&D’s work, the court of appeals erred in reversing summary judgment as to Arredondo’s claims against AEP.  Accordingly, we reverse the court of appeals’ judgment as to those claims and render judgment for AEP.  We remand the case to the trial court for further proceedings on the negligence claim against T&D.

 

 

 

 

 

                                              _____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** November 20, 2020